**Michael RIVERA, on behalf of himself and all others similarly situated, Plaintiff-Cross-Appellant-Appellee,**

and

**International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and Donald E. Volck, Plaintiffs-Intervenors-Cross-Appellants-Appellees,**

v.

**Gloria BECERRA, Director of California Employment Development Department, Defendant-Appellee,**

and

**Raymond J. Donovan, Secretary of United States Department of Labor, Defendant-Appellant-Cross-Appellee.**

Nos. 81–4473, 82–4394, 82–4417, 82–4585, 82–4607 and 83–2006.

United States Court of Appeals, Ninth Circuit.

Argued March 16, 1983.

Submitted May 12, 1983.

Decided Aug. 29, 1983.

Michael Kimmel, Dept. of Justice, Washington, D.C., for Dept. of Labor.

Stephen P. Berzon, Altschuler & Berzon, San Francisco, Cal., Robert E. Taren, Santa Cruz, Cal., for plaintiff-cross-appellant-appellee and plaintiffs-intervenors-cross-appellants-appellees.

Before FAIRCHILD,* HUG, and FARRIS, Circuit Judges.

HUG, Circuit Judge:

This is an action challenging, on constitutional, statutory, and procedural grounds, amendments to the Federal Unemployment Tax Act and their interpretation by the Secretary of Labor ("Secretary"). The law in issue concerns the manner in which unemployment benefits are offset by various pension benefits. The issues on appeal are (1) whether the Secretary should have complied with notice and comment procedures before issuing rules explaining how states are to apply the law, (2) under what circumstances social security benefits offset unemployment benefits, (3) to what extent private pension benefits offset unemployment benefits, (4) whether the private pension offset is unconstitutional, and (5) whether pensions which vest before the section's effective date should offset unemployment benefits. We rule for the Secretary on all five issues, reversing the district court on the first two issues, and affirming on the last three issues.

I

FACTS AND BACKGROUND

Michael Rivera is 72 years old and retired. After retiring on his social security pension and private pension, he took a part-time job, earning about $100 per week, to help meet his expenses. He was eventually laid off from this job and applied for unemployment insurance benefits. But for his pensions, he would have been entitled to $54 per week. Because of his pensions, however, he was ineligible for unemployment insurance benefits.

---

* The Honorable Thomas E. Fairchild, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

Rivera then brought this action against the Secretary of Labor and the Director of the California Employment Department on behalf of himself and all others similarly situated. He challenged the amendments to the Federal Unemployment Tax Act, 26 U.S.C. §§ 3301–3311, under which his unemployment benefits were offset by his pension benefits. Specifically, he challenged the constitutionality of 26 U.S.C. § 3304(a)(15)(A), the Secretary's interpretation of that section, and the manner in which the Secretary promulgated his interpretation.

The district court certified a class of "all California residents whose unemployment benefits have been reduced or eliminated because of 26 U.S.C. § 3304(a)(15), as amended, California Unemployment Insurance Code § 1255.3, as amended, or United States Department of Labor or California Employment Development Department directives, rules, or policies implementing the aforesaid provisions."

The district court ruled on the substantive issues in two opinions on cross-motions for summary judgment. *Rivera v. Patino,* 524 F.Supp. 136 (N.D.Cal.1981); *Rivera v. Patino,* 543 F.Supp. 1160 (N.D.Cal.1982). In the first opinion, the district court ruled that section 3304(a)(15) was constitutional, 524 F.Supp. at 147, but struck down the Secretary's directive interpreting section 3304(a)(15) for failure to comply with certain procedures set forth in the Administrative Procedure Act. *Id.* at 149. In the second opinion, the district court ruled that the Secretary had correctly interpreted section 3304(a)(15) as to the manner in which private pensions offset unemployment benefits, 543 F.Supp. at 1172, but that his interpretation as to the manner in which social security benefits offset unemployment benefits was in error. *Id.* at 1174–75.

Both sides appealed.

After it was called to the attention of this court that Rivera might lack standing as to one or more of the issues raised, we remanded the case to the district court. On remand, the district court vacated its judgment, permitted Donald Volck and the United Auto Workers Union to intervene as parties plaintiff, and then reinstated its judgment. The addition of Volck and the Union as named plaintiffs cured the possible standing problem. The case is now back before this court.

II

## NOTICE AND PUBLIC COMMENT REQUIREMENT

Unemployment Insurance Program Letter ("UIPL") Directive Number 7–81, issued by the Secretary, explains to the states how they are to apply the pension offset rules contained in 26 U.S.C. § 3304(a)(15). Rivera contended in the district court that the directive was invalid because the Secretary had failed to provide notice and an opportunity for public comment. The district court agreed, holding that, regardless of whether the Administrative Procedure Act ("APA") applied, notice and an opportunity for public comment were required because the directive had "a substantial impact upon the rights of private parties." 524 F.Supp. at 148.

Rivera argues that the district court's analysis is correct. He apparently concedes that the APA does not require notice and an opportunity for public comment since the directive is an "interpretative rule," and therefore exempt from the APA's notice and comment requirements. 5 U.S.C. § 553(b)(A).[1] Nonetheless, Rivera argues that the district court correctly ruled, under the common law of administrative procedure, that notice and an opportunity for public comment were required because the directive had a substantial impact.

The district court's ruling was based on the holdings of several other courts that even interpretative rules must comply with

---

1. The District of Columbia Circuit has ruled that one portion of UIPL Directive No. 7–81 is legislative rather than interpretative, and therefore void until the notice and comment procedure is complied with. *Cabais v. Egger,* 690 F.2d 234, 238 (D.C.Cir.1982). The Secretary has acquiesced in nonenforcement of this portion of the directive.

the notice and comment procedure if they have a "substantial impact." *See, e.g., Pharmaceutical Manufacturers Ass'n v. Finch,* 307 F.Supp. 858, 863 (D.Del.1970); 2 K. Davis, *Administrative Law Treatise* § 7:17 (2d ed. 1979) [hereafter "Davis"]. The theory behind these cases is that, although section 553 does not require the notice and comment procedure for interpretative rules, it also does not prohibit it, and the APA was not intended to cut off the prior developing case law which required agencies to use fair procedure. Davis, § 7:18 at 89.

Other courts, however, have rejected the notion that agencies must comply with the notice and comment procedure for interpretative rules which have a substantial impact. *See, e.g., Energy Reserves Group, Inc. v. Dept. of Energy,* 589 F.2d 1082, 1094 (Temp.Emer.Ct.App.1978). The argument against the substantial impact test is that Congress considered the matter and, in section 553, explicitly excepted "interpretative rules [and] general statements of policy" from the notice and comment procedure. Davis, § 7:18 at 88. Furthermore, agencies now freely issue interpretative rules, and requiring agencies to use the notice and comment procedure would deter them from issuing such rules to the detriment of those who look to the agencies for guidance. *Id.*

In *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), the Supreme Court cast considerable doubt on the viability of those cases holding that the notice and comment procedure may be judicially required even where not required by the terms of the APA. *Vermont Yankee* concerned the application of section 553. Unlike this case, in *Vermont Yankee* the notice and comment procedure was required by the APA. The question was whether additional procedures could be judicially required. The Court held that additional procedures could not be required and stated:

> [Section 553 establishes] the maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures. Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them. This is not to say necessarily that there are no circumstances which would ever justify a court in overturning agency action because of a failure to employ procedures beyond those required by the statute. But such circumstances, if they exist, are extremely rare.

435 U.S. at 524, 98 S.Ct. at 1202 (footnote omitted).

There is a difference of opinion as to the proper interpretation of this language from *Vermont Yankee.* Professor Davis argues for interpreting it very narrowly. He says that this language "may be effective as a prohibition against adding cross-examination to § 553 procedure, and as a prohibition against adding other requirements which the Supreme Court disapproves," Davis, § 7:19 at 94, but not as a prohibition against requiring "notice and comment procedure for issuing an interpretative rule having substantial impact." *Id.* at 91.

The District of Columbia Circuit disagrees with Professor Davis. In a case involving the same directive which is in issue here, *Cabais v. Egger,* 690 F.2d 234 (D.C. Cir.1982), that court rejected the substantial impact test and held that the Secretary was not required to employ the notice and comment procedure before issuing UIPL Directive No. 7–81. *Id.* at 237–38. The court wrote that since *Vermont Yankee,* "it is clear that a court cannot engraft additional procedures on agency action beyond those contemplated by the APA (or another specific Act). Simply because agency action has substantial impact does not mean it is subject to notice and comment if it is otherwise expressly exempt under the APA." *Id.* at 237 (footnotes omitted).

This court has never ruled on the substantial impact test. It was raised in *Stoddard Lumber Co. v. Marshall,* 627 F.2d 984, 987–88 (9th Cir.1980), and *Louisiana-Pacific Corp. v. Block,* 694 F.2d 1205, 1210 (9th

Cir.1982), but the court found it unnecessary to adopt or reject the test because there was no substantial impact in either case.

■ We agree with the District of Columbia Circuit that compliance with the notice and comment procedure was not required before the Secretary issued UIPL Directive No. 7–81. Even before *Vermont Yankee,* it was questionable whether the notice and comment procedure could be judicially required in the case of an interpretative rule, such as UIPL Directive No. 7–81, for which Congress had explicitly provided an exemption. *See* 5 U.S.C. § 553(b)(A). Although *Vermont Yankee* dealt with a somewhat different problem, the clear message of that case is that courts are not to engraft "their own notions of proper procedures upon agencies" beyond the requirements of section 553. 435 U.S. at 525, 98 S.Ct. at 1202. Thus, in view of the express exemption in section 553 and the admonition of *Vermont Yankee,* we reject the substantial impact test and reverse the district court on this issue.

## III

### SOCIAL SECURITY OFFSET

Although the district court invalidated UIPL Directive No. 7–81 for failure to comply with the notice and comment procedure, it later found it necessary to rule on the directive's interpretation of the substantive law in question, 26 U.S.C. § 3304(a)(15). 543 F.Supp. at 1163. It was necessary for the district court to interpret section 3304(a)(15) because the Director of the California Employment Department ("Director") was continuing to interpret section 3304(a)(15) consistently with the invalidated directive and was administering California's unemployment insurance program accordingly.[2]

Section 3304(a)(15)(A)(i) specifies the conditions under which unemployment benefits are to be reduced by social security and other pension benefits. This section requires the offset of benefits paid under a plan which the base period employer[3] "maintained (or contributed to) ...." 26 U.S.C. § 3304(a)(15)(A)(i). Section 3304(a)(15)(A) provides:

§ 3304. Approval of State Laws

(a) Requirements—The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission, which he finds provides that—

. . . .

(15) the amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week except that—

(A) the requirements of this paragraph shall apply to any pension, retirement or retired pay, annuity, or other similar periodic payment only if—

(i) such pension, retirement or retired pay, annuity, or similar pay-

---

**2.** Technically, it was California Unemployment Insurance Code § 1255.3, the state statute implementing 26 U.S.C. § 3304(a)(15), which the Director was interpreting. There is no doubt, however, that the state statute was intended to be construed in the same manner as the federal statute. Indeed, the state law even contains a self-destruct provision, which automatically repeals any provision not required by the federal statute. Cal.Unemp.Ins.Code § 1255.3(b) (West Supp.1982).

**3.** The "base period" is the period of employment during which eligibility for unemployment insurance benefits is accrued. Its length is four calendar quarters. A "base period employer" is an employer who paid wages on which the claimant's eligibility for unemployment benefits is based. H.R. 96–538, 96th Cong., 1st Sess. 5 (1979).

ment is under a plan maintained (or contributed to) by a base period employer or chargeable employer (as determined under applicable law), and

(ii) in the case of such a payment not made under the Social Security Act or the Railroad Retirement Act of 1974 (or the corresponding provisions of prior law), services performed for such employer by the individual after the beginning of the base period (or remuneration for such services) affect eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity, or similar payment.

The situation giving rise to the dispute over the proper treatment of social security benefits arises when a worker who is receiving social security benefits as a result of his employment with one employer, reenters the work force and goes to work for a second employer who also contributes to social security, and then is laid off by the second employer and applies for unemployment insurance benefits on the basis of his employment with the second employer. Under the Secretary's interpretation, in this situation the unemployment benefits would be offset by the social security benefits.[4] Under the interpretation urged by Rivera and adopted by the district court, the social security benefits would not offset the unemployment benefits at all because the worker qualified for the social security benefits while working for a different employer than his base period employer.

The purpose of the 1980 amendments, of which the section in issue was a part, was to ameliorate the effect of earlier amendments which required an offset for all pension and social security benefits. This goal was accomplished by providing that only pensions that the base period employer maintained or contributed to, and in the case of private pensions only those pension benefits which were increased or for which the worker

became eligible during the base period, would offset unemployment benefits. 26 U.S.C. § 3304(a)(15)(A)(i) and (ii). The amendments also permit the states to reduce the offset by the amount of the pension benefit attributable to the worker's own contribution. *Id.* at § 3304(a)(15)(B). Rivera contends that Congress also sought to achieve its objective by exempting from the offset social security benefits for which the worker qualified while working for someone other than the base period employer.

The dispute over the proper interpretation of section 3304(a)(15)(A)(i) arises out of a conflict between a portion of the legislative history and the language of the statute.

Section 3304(a)(15)(A)(i) says that if a base period employer contributes to social security, then the unemployment benefits must be offset by the social security benefits. The statutory language does not permit another interpretation. The offset applies under section 3304(a)(15)(A)(i) if the base period employer *"contributed"* to the "plan" from which the pension benefits are derived. Unlike section 3304(a)(15)(A)(ii), which does not apply to social security benefits, section 3304(a)(15)(A)(i) does not say the offset will not apply if the base period contributions did not affect eligibility for or the amount of the pension benefits.

The argument for not requiring an offset in these circumstances is based almost entirely on a statement by Senator Bradley. The language in section 3304(a)(15)(A)(i) was taken from an earlier bill and included as part of an amendment offered by Senator Bradley. The Senator offered several examples of how his amendment would work. The crucial example is as follows:

[A]n individual at company A retires and begins to collect social security. For whatever reason, this person then goes to

---

4. Section 3304(a)(15)(B), however, permits the states to reduce this offset by the amount of the social security benefits attributable to the worker's own contributions. Since one-half of the social security contributions are paid by the worker, states may choose to reduce this offset

by at least one-half. Moreover, under the Secretary's most recent interpretation of section 3304(a)(15)(B), the states may choose not to offset unemployment benefits at all by social security benefits. UIPL 7–81, Change 2 (March 11, 1983).

work for company B and, after 6 months there, is terminated. Assuming the individual is eligible for unemployment insurance because of the work done at company B, the level of unemployment insurance compensation will not be reduced at all. This is because the base period employer is not the same as the social security employer. The offset would apply, however, if the individual had returned to work for company A instead of working for company B. Under those circumstances, the base period employer and the social security employer would be the same.

126 Cong.Rec. S12901 (daily ed. September 18, 1980) (remarks of Senator Bradley). The district court found Senator Bradley's statement persuasive.

Rivera argues that Senator Bradley's statement is conclusive, even if contrary to the apparent meaning of the statute, because it is a clear statement of legislative intent and such an interpretation would be reasonable and consistent with the policy of the legislation. *See Gila River Indian Community v. Henningson, Durham & Richardson,* 626 F.2d 708, 710 (9th Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981). The Secretary argues that Senator Bradley was either mistaken or was referring to a case where the second employer did not contribute to social security. Regardless, the Secretary argues that a statement by one senator should not control over the clear meaning of the statute. *See Piper v. Chris-Craft Industries,* 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977); *American Smelting and Refining Co. v. OSHRC,* 501 F.2d 504, 509 (8th Cir.1974).

Each side cites to a number of other portions of the legislative history to support its interpretation. Each of these other citations, however, is ambiguous and can be explained away as either referring only to private pensions or as referring to a different section of the law.

■ "The best indicator of what statutory words mean is what they say." *Finnegan v. Matthews,* 641 F.2d 1340, 1344 (9th Cir.1981). Determining the meaning of a statute from its legislative history is "a step to be taken cautiously," *Piper,* 430 U.S. at 26, 97 S.Ct. at 941, particularly when the meaning appears clear on the face of the statute. *See Church of Scientology v. United States Dept. of Justice,* 612 F.2d 417, 422 (9th Cir.1979). Where, as here, there is no ambiguity in the statutory language, resort to the legislative history is usually unnecessary. *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978); *United States v. Rone,* 598 F.2d 564, 569 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). While the legislative history may be considered where the plain meaning of the statute "would lead to an unreasonable result 'plainly at variance with the policy of the legislation as a whole,'" *Gila River,* 626 F.2d at 710, *quoting Ozawa v. United States,* 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199 (1922), such is not the case here. The statutory language in question was part of an attempt by Congress to ameliorate the harsh effects of earlier legislation, and the line drawn by the statute is neither so unreasonable nor so at variance with the policy of the legislation as to justify disregarding the clear meaning of the statute's words.

■ We reverse the district court on this issue. Senator Bradley's statements cannot replace the interpretation compelled by the statutory language. *See SEC v. Mount Vernon Memorial Park,* 664 F.2d 1358, 1364 (9th Cir.), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982). Section 3304(a)(15)(A)(i) says and means that social security benefits offset unemployment benefits if the base period employer makes social security contributions.

## IV

### PRIVATE PENSION OFFSET

Section 3304(a)(15)(A)(i) provides that pension benefits will offset unemployment benefits only if the base period employer maintained or contributed to the pension plan. In the case of private pensions, section 3304(a)(15)(A)(ii) further limits the

cases in which there will be an offset by providing that a private pension will not offset unemployment benefits if the worker's base period employment did not "affect eligibility for, or increase the amount of, such pension . . . ."

Rivera contends that under section 3304(a)(15)(A)(ii), a private pension which increases during the base period employment should only offset unemployment benefits by the amount of that increase. Under the Secretary's interpretation, the entire amount of the pension would offset the unemployment benefits. The district court found the Secretary's interpretation to be correct. 543 F.Supp. at 1172.

The district court's ruling that the full amount of a pension should be offset where section 3304(a)(15)(A)(ii) applies is based on the wording of that section. The district court interpreted section 3304(a)(15)(A)(ii) as specifying which pensions will offset unemployment benefits, *i.e.* those pensions for which the claimant's base period employment affected his eligibility or increased his benefits, but not as determining the amount of the offset. The amount of the offset is contained in the paragraph which section 3304(a)(15)(A)(ii) modifies, section 3304(a)(15). That paragraph calls for an offset of the full amount of the pension. (This is modified, however, by section 3304(a)(15)(B), which permits the states to reduce the offset by the amount of the pension benefits attributable to the claimant's own contributions.)

Rivera's argument, that under section 3304(a)(15)(A)(ii) only the amount by which the pension increased during the base period is offset, is based almost entirely on Rivera's characterization of the legislative intent. As the district court noted, however, to the extent that the legislative history touches on this problem, it supports the Secretary's interpretation.

The one portion of the legislative history which is closest to being on point is another of Senator Bradley's examples:

A worker at company A retires at age 65 after 35 years of service there and begins collecting a pension of $600 per month. He then unsuccessfully seeks new employment and files an unemployment insurance claim. The State computes this individual's unemployment benefit rate at $130 per week, or $520 per month, because of the past earnings reported to the State. This individual would not be eligible for unemployment insurance payments because the amount of the pension received from the base period employer exceeded the unemployment insurance payments that were to be paid.

126 Cong.Rec. S12901 (daily ed. September 18, 1980) (remarks of Senator Bradley). In this example, the entire amount of the pension is offset against the unemployment benefits. Rivera points out that the Bradley example is not necessarily inconsistent with his interpretation of section 3304(a)(15)(A)(ii). Under Rivera's interpretation, it would be proper to offset the entire amount of the pension in the Bradley example if the claimant did not become eligible for the pension until his base period employment. If, however, the claimant became eligible for his pension prior to the base period and the pension increased during the base period, then the offset would only be the amount of the base period increase under Rivera's interpretation. The problem with Rivera's interpretation is that it assumes Senator Bradley left a crucial fact out of his example. Regardless, we again rely on the language of the statute and not the legislative history.

■ We agree with the district court. The wording of the statute does not permit another construction. Section 3304(a)(15) provides for an offset of the full amount of any pension described in section 3304(a)(15)(A)(i) and (ii). In the case of private pensions, section 3304(a)(15)(A)(ii) specifies that the offset applies if the base period "services . . . affect eligibility for, or increase the amount of" the pension. It does not specify that the offset applies only to the increase effected by the base period employment.

## V

### EQUAL PROTECTION

Rivera argues that if section 3304(a)(15)(A)(ii) is interpreted to require an offset of the total amount of any pension benefits which increased as a result of base period employment, then it violates the Constitution's equal protection guarantee. He argues that there is no conceivable rational basis for offsetting the full amount of pension benefits of a claimant whose pension increased slightly as a result of his base period employment, while not offsetting any part of the amount of the pension benefits received by a claimant whose pension is unaffected by his base period employment.

■ Under the equal protection clause, the classifications in 3304(a)(15)(A) must only bear a rational relationship to a legitimate state interest. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The Supreme Court has explained the application of this test as follows:

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730]. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426, [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393].

*Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). It is not necessary to show that the classification "precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute." *Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 2472, 45 L.Ed.2d 522 (1975).

The district court found that the lines drawn by section 3304(a)(15)(A) passed constitutional muster, even though in some cases they produced apparently inequitable results. In the district court's view, Congress had several purposes, not always consistent with each other. Congress was attempting to (1) eliminate the possibility of a truly retired worker collecting unemployment benefits, (2) "avoid forcing employers to be concurrently responsible for both unemployment insurance and pension benefits arising from the same period of employment," (3) "preserve the program's fiscal integrity by tightening eligibility standards," and (4) create classifications that could be easily administered. 524 F.Supp. at 145–46. The district court determined that, although the classifications in section 3304(a)(15)(A) may not do a perfect job of sorting, they are justified by their ease of administration. *Id.* at 146.

■ We agree with the district court's analysis. Section 3304(a)(15)(A) is not violative of the equal protection clause for the reasons given by the district court. 524 F.Supp. at 145–47; *see Cabais v. Egger,* 527 F.Supp. 498, 502–03 (D.D.C.1981), *aff'd and rev'd on other grounds,* 690 F.2d 234 (D.C. Cir.1982).

## VI

### RETROACTIVE APPLICATION

■ Rivera argues that applying the pension offset requirements of section 3304(a)(15) to pensions which vested prior to April 1, 1980, the effective date of that section, is an impermissible retroactive application of the pension offset law. He argues that "since many workers ... had bargained with their employers in the expectation that once their pensions vested they would be entitled to receive their full

pension benefits plus unemployment insurance in the event they were later fired or laid off from their jobs, the Secretary's application of the pension offset law attached a new disability to a transaction that was already past, and was therefore retroactively applied." *See Sturges v. Carter*, 114 U.S. 511, 519, 5 S.Ct. 1014, 1018, 29 L.Ed. 240 (1885). Rivera goes on to argue that under *Bradley v. School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), retroactive application is prohibited on these facts because it would be "manifestly unjust."

The district court correctly rejected this argument. 543 F.Supp. at 1175–76. There is nothing in the language of the statute or its legislative history to indicate that it was not intended to apply to pensions which vested before April 1980. Indeed, the plain language of section 3304(a)(15) applies to all pensions, regardless of when they vest. Furthermore, this is not a case of retroactive application. In section 3304(a)(15), Congress did not alter anyone's vested pension rights; it adjusted the manner in which public benefits would be distributed in the future.

## VII

### CONCLUSION

It was not necessary for the Secretary to comply with the notice and comment procedure before issuing UIPL Directive No. 7–81. The Secretary's interpretation of the social security and private pension offset provisions of 26 U.S.C. § 3304(a)(15)(A) is correct. Section 3304(a)(15)(A) does not violate the equal protection clause, nor is it an impermissible retroactive application of the law.

Costs are awarded to the Secretary.

AFFIRMED IN PART and REVERSED IN PART.