**William E. BOWMAN, Individually and on behalf of all others similar situation, Plaintiff-Appellee,**

v.

**W. Grady STUMBO, Secretary, Kentucky Department of Human Resources, et al., Defendants-Appellants,**

and

**Raymond J. Donovan, Secretary of the Department of Labor, Intervening Defendant-Appellant.**

**Nos. 82–5746, 83–5457.**

United States Court of Appeals, Sixth Circuit.

Argued March 27, 1984.

Decided May 25, 1984.

---

R. Hughes Walker, Gen. Counsel, Stanley A. Stratford, Assistance General Counsel, Daniel F. Egbers, Staff Attorney Cabinet, for Human Resources, Frankfort, Ky., for defendants-appellants in No. 82–5746.

Mark C. Rutzick, David M. Glass, Dept. of Justice, Washington, D.C., for defendants-appellants in No. 83–5457.

Michael Kimmel, argued, Leonard Schaitman, Attys., Appellate Staff, Civ.Div., Dept. of Justice, Washington, D.C., amicus curiae for defendants-appellants.

Richard W. McHugh, Barry L. Master, Legal Aid Soc. of Louisville, Louisville, Ky., Wendy L. Kahn, argued, Zwerdling, Schlossberg, Leibig & Kahn, Washington, D.C., for plaintiff-appellee.

---

* Hon. James P. Churchill, United States District Court for the Eastern District of Michigan, sit-

Before JONES and CONTIE, Circuit Judges, and CHURCHILL, District Judge.*

CHURCHILL, District Judge.

. These appeals present a single question of statutory construction: whether 26 U.S.C. § 3304(a)(15)(A)(i) requires that unemployment compensation benefits be offset by the amount of Social Security or Railroad Retirement benefits received by the unemployed worker where the right to such benefits derives from work with an employer other than that employer which gives rise to his claim for unemployment compensation.

## I. Introduction to the Statutory Scheme

In 1935, Congress enacted comprehensive unemployment legislation as Title IX of the Social Security Act of 1935, now codified as part of the Internal Revenue Code, 26 U.S.C. § 3301–11 as the Federal Unemployment Tax Act ("FUTA"). FUTA imposes an excise tax upon the payrolls of most employers (§ 3301), but allows a credit against that tax of 90% of the employer's contributions to the state unemployment compensation fund which is certified by the Secretary of Labor (§ 3302). Such certification is made only if the state's administration of its unemployment compensation fund is in compliance with the standards of § 3304. If so certified, the state remits the employer's contributions to the Secretary of the Treasury for deposit into the Unemployment Trust Fund created by 42 U.S.C. § 1104. Thereafter, states administer the payment of unemployment compensation claims by request for monies held on their account in the Trust Fund (42 U.S.C. § 1104(f)) and receive financial assistance for expenses of administration of the program (42 U.S.C. § 501–04 and § 1101).

"the amount of compensation payable to an individual for any week .... with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which

ting by designation.

based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week except that—

(A) The requirements of this paragraph shall apply to any pension, retirement or retired pay, annuity, or other similar periodic payment only if—

(i) such pension, retirement or retired pay, annuity or similar payment is under a plan maintained (or contributed to) by a base period employer or chargeable employer (as determined under applicable law), and

(ii) in the case of such a payment not made under the Social Security Act or the Railroad Retirement Act of 1974 ..., services performed for such employer by the individual after the beginning of the base period (or remuneration for such services) affect eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity, or similar payment, and

(B) the State law may provide for limitations on the amount of any such reduction to take into account contributions made by the individual for the pension, retirement or retired pay, annuity, or other similar periodic payment".

The Secretary of Labor, in a directive to the states as to their obligation to implement such an offset provision into their laws, has construed subsection (A)(i) of the offset provision to require that unemployment compensation benefits be reduced by the amount of Social Security or Railroad Retirement benefits if the claimant's base period employer or chargeable employer[1] contributes to the Social Security or Railroad Retirement program. This directive, in the form of an Unemployment Insurance Program Letter, No. 7–81 dated November 7, 1980 ("UIPL No. 7–81"),[2] "required" or "requested" the states to "take necessary action to assure by change in the State law that pension payment received by claimants are deductible under the State law as required by section 3304(a)(15), FUTA, as amended."[3]

## II. The Proceedings Below

The complaint alleged that plaintiff William Bowman had earned an entitlement for Social Security benefits solely as a result of employment with numerous employers as a plasterer prior to his retirement at the age of 65 in August, 1980.[4] It further alleged that several months after his retirement plaintiff returned to work for his cousin, Richard Bowman, a plastering contractor, for whom he had not worked previously, and that he continued working from November, 1980 until July, 1981, when he was laid off for lack of work. The plaintiff alleged that his subsequent claim for unemployment benefits was not honored on the basis of Kentucky state officials' interpretation of the offset provision and a following of UIPL No. 7–81.

The complaint essentially claimed that the offset provision did not mandate or authorize an offset against unemployment benefits of Social Security benefits and sought declaratory and injunctive relief. The complaint included allegations of a plaintiff class and the district court, pursu-

---

1. A "base period employer" is one who employs the claimant immediately prior to his claim, giving rise to the claimant's entitlement for unemployment compensation benefits. See KRS 341.090. A "chargeable employer" is one whose unemployment insurance account is charged for a particular claimant's benefits. Generally, only the most recent employer is a chargeable employer. KRS 341.530(2).

2. UIPL No. 7–81 is reproduced at 47 Fed.Reg. 29905–08 (1982).

3. The unique federal and state cooperation in the administration of unemployment compensa-

tion program is fostered by the inducement of credits against FUTA liability for contributions to qualified state programs. The program has sustained a challenge that it is coercive and effectively compels the states to abdicate power reserved to them under the Tenth Amendment. *Steward Machine Co. v. Davis,* 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937).

4. As used herein, the term "Social Security benefits" refer to old age insurance benefits under 42 U.S.C. § 402(a).

ant to a stipulated order, certified a class pursuant to F.R.Civ.P. 23(b)(2).[5]

The parties also submitted a comprehensive stipulation of facts which included those alleged by the plaintiff as summarized above and reduced the controversy between the parties to a matter of law:

"11. Shortly after beginning his retirement, the plaintiff concluded that his monthly social security retirement payment was insufficient to meet the economic needs of he and his wife. On November 14, 1980, plaintiff began to work part time as a plasterer for his cousin, Richard Bowman, who is a plastering contractor. In this capacity, plaintiff worked for Richard Bowman for approximately eight (8) months, until his last day of actual work on July 31, 1981. For the next several weeks, plaintiff was offered no work by Richard Bowman, who laid off plaintiff by formal action on September 8, 1981 due to lack of available work.

12. At all times mentioned in ¶ 11, *supra*, plaintiff's employer, Richard Bowman, withheld Federal Insurance Contributions Act (commonly known as "FICA") taxes from the wages paid to plaintiff.

13. At all times mentioned in ¶ 11, plaintiff informed the Social Security Administration of his supplemental earnings derived from his employment with Richard Bowman. These additional earnings did not at any time alter plaintiffs eligibility for or the monthly benefit amount of the social security retirement payments he has received since August 1980.

14. At no time prior to his retirement in August 1980 had plaintiff ever worked as an employee for Richard Bowman. The only time that plaintiff was ever employed by Richard Bowman was between November 1980 and July 1981.

15. Plaintiff eligibility for and monthly benefit amount of social security retirement payments has not in any manner been based upon or affected by plaintiff's employment with Richard Bowman.

16. On or about January 7, 1982, plaintiff applied for unemployment insurance benefits through the offices of the Division of Unemployment Insurance, Kentucky Department for Human Resources. On or about January 18, 1982, the Division for Unemployment Insurance issued a "Notice of Benefit Rights" (hereafter "Notice") with respect to plaintiff's claim for unemployment insurance benefits....

17. In the aforementioned Notice, the Division for Unemployment Insurance determined that plaintiff is eligible for unemployment insurance benefits, on the basis of base period wages earned by plaintiff during the fourth calendar quarter of 1980 and the first three calendar quarters of 1981. The same notice identifies Richard Bowman as the sole base period employer for the purpose of determining plaintiff's eligibility for unemployment benefits.

18. Plaintiff .... has since been advised by representatives of the Division of Unemployment Insurance that he has not received nor will he receive payment of any unemployment insurance benefits so long as he continues to receive his monthly social security retirement payment of $477.00.

20. .... In a letter dated April 6, 1982, counsel for plaintiff received a response from the Office of Counsel stating that plaintiff would continue to not receive payment of unemployment benefits based upon their interpretation of 26 U.S.C. § 3304(a)(15). In that same letter,

---

**5.** The plaintiff class was defined as "all persons in Kentucky who meet the following three criteria: all persons (a) who are otherwise eligible to receive weekly unemployment insurance benefits; and (b) whose benefits have been, continue to be, or will be subject to reduction due to their receipt of pension, retirement or retired pay, annuity or similar periodic payment made under the Social Security Act or the Railroad Retirement Act of 1975 (or the corresponding provisions of the prior law) and (c) whose said periodic payment based upon wages paid by an employer is based upon wages paid by an employer or employers other than their base period employer".

defendants also indicate that they deem their administration of 26 U.S.C. § 3304(a)(15) as being authorized by virtue of UIPL No. 7–81.

21. Defendants specifically rely upon 26 U.S.C. § 3304(a)(15) and UIPL No. 71 (sic) as the authority for reducing the weekly unemployment insurance benefits of plaintiff and plaintiff class members. Defendants do not place reliance upon any other statute, regulation, program letter, office policy statement or other comparable authority for the aforesaid practice."

The Plaintiff then filed his motion for summary judgment. The record indicates that the original defendants, officials of Kentucky's Department for Human Resources and Bureau for Social Insurance, did not file an opposition to the motion. The district court, without a written opinion and apparently without oral arguments, ordered that the defendants' application of the offset provision to the plaintiff class was unauthorized, i.e., there was no authority "to reduce the unemployment benefits of otherwise eligible claimants who received Social Security or Railroad Retirement benefits which are based upon employment services with non-base period employers." Subsequently, the Secretary of Labor obtained leave to intervene as a defendant and filed his own notice of appeal separate from that of the state defendants.

### III. Construction of the Offset Provision

The defendants contend that the District Court's construction of the offset provision ignores the plain language of the statute. They contend that the offset provision clearly sets Social Security and Railroad Retirement benefits apart from private pensions and mandates that such "public" pensions reduce a claimant's unemployment compensation benefit dollar-for-dollar where, as here, the base period employer contributes to the retirement system. Plaintiff contends that such an interpretation of the statutory language would contravene the clearly expressed legislative intent that the offset provisions *not* apply to reduce the unemployment benefits of claimants whose entitlement to such benefits results from work for a base period employer not the same as the employer or employers whose contributions give rise to their entitlement to Social Security Retirement benefits.

The Court is convinced that the plain language of the offset provision renders all such Social Security benefits applicable to reduce the unemployment benefits where, as here, both the former and the base period employers contributed to the Social Security system. Likewise, Railroad Retirement Act benefits would be offset against unemployment benefits where both the former and base period employers contributed to the Railroad Retirement Plan.[6]

The parties here stipulated that the plaintiff's base period employer withheld Federal Insurance Contributions Act ("FICA") taxes from his wages. (See 26 U.S.C. § 3101–02). It also appears that the plaintiff's employer was making payments of the FICA excise tax upon it, which tax is set at the same rate upon the employee's wages. See 26 U.S.C. § 3111. These taxes, like FUTA, were also created by the Social Security Act of 1935 as a part of the comprehensive program for implementing old age benefits on a national level. *Helvering v. Davis*, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937).[7]

Under subsection (A) of the offset provisions, the Social Security and Railroad Retirement benefits will be applied to reduce an entitlement to unemployment compensation benefits only if they meet the

---

**6.** It would appear that no offset would be mandated by the statute where the claimant has earned Railroad Retirement benefits and later claimed unemployment benefits by virtue of work with a base period employer who contributes to the Social Security system.

**7.** Analogous provisions imposing a dual tax on railroad employers and employees are contained in the Railroad Retirement Tax Act ("RRTA"). 26 U.S.C. § 3201–33. These taxes finance the payment of annuities to railroad employees under the Railroad Retirement Act of 1974. 45 U.S.C. § 231–231u.

requirement of sub-section (1), i.e., only if such benefits are paid under a plan to which the claimant's base period employer contributes. On the other hand, private pensions will reduce unemployment compensation only if they meet the requirements of both subsections (i) and (ii), i.e., only if the claimant's base period employer maintains or contributes to the pension plan *and* such base period employment affects eligibility for, or increases the amount of, the pension.

Under subsection (B) of the offset provisions, Congress has authorized the states to limit the amount of the offset in the amount of claimant's contributions to the retirement or similar periodic payment benefit.

Given the clear distinction between such public and private pensions set forth in subsections (i) and (ii), and the nature of FICA and RRTA taxes as the lynchpin of Social Security and Railroad Retirement benefits, the Court is satisfied that the Social Security and Railroad Retirement systems must be deemed to be a "plan" to which a base period employer "contributes" through payment of the FICA or RRTA taxes. Consequently, the offset provisions apply to the plaintiff's Social Security benefits as well as all class members' Railroad Retirement benefits.

The Court is left to address the plaintiff's contention that this construction is contrary to the legislative intent of the offset provision. Plaintiff cites in particular the remarks of Senator Bradley in discussing the adoption of a joint house conference report on the offset provision:

> I would like to outline for the record what we have accomplished by the adoption of the conference report. I will offer some examples of how the new law will work as of 1981:
>
> First, an individual at company A retires and begins to collect social security. For whatever reason, this person then goes to work for company B and after 6 months there is terminated. Assuming the individual is eligible for unemployment insurance because of the

work done at company B, the level of unemployment insurance compensation will not be reduced at all. This is because the base period employer is not the same as the social security employer. The offset would apply, however, if the individual had returned to work for company A instead of working for company B. Under those circumstances, the base period employer and the social security employer would be the same.

126 Cong.Rec. S12901 (daily ed. September 18, 1980).

This Court has recently examined the propriety of disregarding the clear language of a statute in favor of an expressed legislative intent:

> "[I]n determining the scope of a statute, one is to look first at its language."
> .... "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive. .... Further, [it] is axiomatic that where a statute is clear and unambiguous on its face, a court will not look to legislative history to alter the application of the statute except in rare and exceptional circumstances...."
> .... such as where Congress "expressly indicates" its intent that the plain meaning of the statutory language be avoided ... [citations omitted].

*Henry T. Patterson Trust v. United States,* 729 F.2d 1089 at 1094–1095 (6th Cir.1984).

In light of Senator Bradley's comments which obviously are at odds with the Court's reading of the statute's language, the Court examines the legislative history of the offset provision in order to determine whether there exists a legislative intent that the unambiguous statutory language ought not govern.

The offset provision was first enacted as part of the Unemployment Compensation Amendments of 1976, which for the first time implemented an offset provision for recipients of pensions as subsection (15) to § 3304(a) of Title 26. Pub.L. No. 94–566,

§ 314(a), 90 Stat. 2667, 2680.[8] The initial offset provision mandated that state unemployment laws require reduction of the compensation in the amount of all such pensions without further qualification, i.e., there were no subsections of limitation of the offset such as the Court is construing in this case.

This initial offset provision was added as an amendment to the House of Representatives bill at the urging of the Senate Committee on Finance, which summarized its purpose as follows:

"It was brought to the attention of the committee that in a number of states retired people who are receiving public and private pensions, railroad retirement annuities, social security retirement benefits, military retirement pay, etc., and who have actually withdrawn from the labor force are being paid unemployment compensation. In other States, various rules are used to disqualify some or all of these people. The committee believes that a uniform rule is required and has added to the bill a new provision requiring each State to prohibit the payment of unemployment compensation to any individual who is entitled to any government or private retirement pay, retirement pension to [sic] retirement annuity based on previous employment."

Senate Report No. 94–1265, 94th Cong., 2d Sess. 21–22, reprinted in 1976 U.S.Code Cong. & Ad. News 5997 at 6015–16. The provision was agreed to by the House, but its effective date was set for 1979 so as to allow the National Commission on Unemployment Compensation an opportunity for a study of the provision and for Congress to act in accordance with the Commission's recommendations.[9] House Conference Report No. 94–1745, 94th Cong., 2d Sess. 16,

reprinted in 1976 U.S.Code Cong. & Ad. News 5997 at 6040.

Shortly after the effective date of the initial offset provision, the amendments at issue here were enacted in § 414 of the Multiemployer Pension Plan Amendments Act of 1980. Pub.L. 96–364, 94 Stat. 1208, 1310. Plaintiff's argument addresses itself to comments on the amendments of several Senators as to ameliorative purpose of these amendments, specifically the quoted comment by Senator Bradley.

The parties' contentions concerning the legislative intent in large part mirror those summarized in the two opinions in *Rivera v. Patino*, 543 F.Supp. 1160 (N.D.Cal.1982) affirmed in part and reversed in part *sub nom, Rivera v. Becerra*, 714 F.2d 887 (9th Cir.1983) *cert. den.*, —— U.S. ——, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984). The district court there adopted the view that the legislative history compelled a construction that social security benefits would not offset unemployment compensation in circumstances such as those presented here.

However, this Court agrees with the reasoning of the Court of Appeals for the Ninth Circuit in reversing the district court on this issue. The Court cannot improve on the reasoning contained in its opinion (see specifically 714 F.2d at 891–93) except to cite another opinion reaching the identical result on this issue: "[t]he proper function of legislative history is to solve, and not create, an ambiguity". *Peare v. McFarland*, 577 F.Supp. 791 at 794 (N.D. Ind.1984).

It is apparent to the Court that most of the comments as to the ameliorative effect of the offset amendments are reconcilable as referring to subsection (B), allowing the states to reduce the offset by the amount of the employees' contributions. Senator

---

**8.** The initial offset provision provided:

"(15) the amount of compensation payable to an individual for any week which begins after September 30, 1979, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or other similar periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity or other payment, which is reasonably attributable to such week."

**9.** The effective date of the original offset provision was again extended to March 31, 1980. Pub.L. No. 95–19, 91 Stat. 39, 45 (1977).

Bradley's comment, though clearly not referring to subsection (B), cannot take precedence over the clear statutory mandate. Accordingly, the Court concludes that the legislative history does not permit disregard of the plain meaning of the off-set provision.

The judgment of the district court is reversed.