ANIMAL LEGAL DEFENSE FUND, et al., Plaintiff(s),

v.

Donald J. QUIGG, et al., Defendant(s).

No. 88–2938–FMS.

United States District Court,
N.D. California.

March 29, 1989.

Joyce S.A. Tischler, Animal Legal Defense Fund, San Rafael, Cal., Steven M. Wise, P.C., Fraser & Wise, Boston, Mass., and Kenneth D. Ross, Chicago, Ill., for plaintiffs.

Stephen L. Schirle, Asst. U.S. Atty., for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

FERN M. SMITH, District Judge.

This matter came on by defendants' motion to dismiss on December 14, 1988. All parties were represented by counsel. The Court has considered the submissions of the parties as well as counsel's arguments at the Hearing on this matter. For the reasons stated below, this Court grants defendants' motion to dismiss the action.

The plaintiffs fall into two categories. A number of them are individual farmers or animal husbanders. The remainder are non-profit corporations that have as their purpose the championing of animals' rights, or, more precisely, the limitation of people's rights to do as they wish with animals. The defendants, Messrs. Quigg and Verity, are the Commissioner of the United States Patent and Trademark Office (PTO) and the Secretary of Commerce, respectively. The amended complaint states two causes of action.

First, plaintiffs claim that the defendants have promulgated a rule in violation of the Administrative Procedure Act, 5 U.S.C. Sec. 500 *et seq.* (APA). Specifically, plaintiffs assert that defendants ran afoul of the APA by failing to provide for a period of public notice and comment as required by 5 U.S.C. Section 551 *et seq.* Second, the plaintiffs claim that the rule was promulgated in excess of defendants' statutory authority. Defendants have moved to dismiss both of these claims on the alternative grounds that plaintiffs are without standing to bring this action and that the amended complaint fails to state a claim on which relief may be granted. For purposes of deciding whether the amended complaint states a claim, the Court assumes, without deciding, that plaintiffs have the requisite standing to bring these claims.

A motion to dismiss must be denied unless there is no doubt that the plaintiff can prove no set of facts in support of his claim that would warrant relief. *Experimental Eng. Inc. v. United Tech. Corp.*, 614 F.2d 1244, 1246 (9th Cir.1980). The facts as alleged in the Complaint are taken, for purposes of this motion, to be true. *Id.* at 1245; *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### The Rule

On or about April 7, 1987, the PTO promulgated a rule that stated that the PTO considers non-naturally occurring, non-human multicellular organisms, including animals, to be patentable subject matter within the scope of 35 U.S.C. Section 101 *et seq.* (the "Rule"). In support of its statement, the Rule expressly relied upon two administrative decisions of the Board of Patent Appeals and Interferences (BPAI), *Ex Parte Allen*, 2 U.S.P.Q. 1425 (BPAI April 3, 1987) and *Ex Parte Hibberd*, 227 U.S.P.Q. 443 (BPAI 1985) and a decision of the United States Supreme Court, *Diamond v. Chakrabarty*, 447 U.S. 303, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980).

The Rule was not published in the Federal Register prior to its promulgation, nor was the public invited to review and comment upon the Rule in its proposed form before the Rule was promulgated.

### The APA

The APA permits administrative agencies of the federal government to promulgate rules which the APA defines in relevant part as "an agency statement of general or particular applicability and future

effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. Section 551(4).

5 U.S.C. Section 553 prescribes the procedures to be followed in administrative rule making. "General notice of proposed rule making shall be published in the Federal Register...." *Id.* at Section 553(b). The notice must include information as to when and where the rule making proceedings are to be held, what legal authority the rule is proposed under and the terms or substance of the proposed rule. *Id.* at Section 553(b)(1–3). After the required notice, "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views or arguments...." *Id.* at Section 553(c). These notice and public comment requirements, however, are inapplicable to "interpretative rules, general statements of policy or rules of agency organization, procedure or practice." *Id.* at Section 553(b)(A).

*The Legal Standard*

The PTO argues that the Rule is "interpretative" and therefore exempt from the public notice and comment requirements of the APA. This Court is, of course, not bound by the PTO's label in determining whether a rule is interpretative or substantive. *Hou Ching Chou v. Attorney General,* 362 F.Supp. 1288 (D.C. D.C.1973); *Lewis–Mota v. Secretary of Labor,* 469 F.2d 478 (2d Cir.1972).

In general, the exceptions to Section 553's public notice and comment requirements must be "narrowly construed and only reluctantly countenanced." *Alarcaz v. Block,* 746 F.2d 593, 612 (9th Cir.1984); *American Federation of Government Employees v. Block,* 655 F.2d 1153, 1156 (D.C.Cir.1981) ("AFGE"). On the other hand, "courts may not impose their own federal administrative common law framework on agency procedures beyond what the APA requires." *Alarcaz,* 746 F.2d at 613; *Rivera v. Becerra,* 714 F.2d 887, 889–91 (9th Cir.1983, *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984).

In determining whether there must be public notice and comment for a particu-

lar rule, some courts have adopted what has come to be called the "substantial impact" test. *See, e.g., Pharmaceutical Manufacturers' Ass'n v. Finch,* 307 F.Supp. 858, 863 (D.Del.1970); K. Davis, *Administrative Law Treatise* Section 7:17 (2d Ed.1979); *see also Energy Reserves Group v. Department of Energy,* 589 F.2d 1082, 1103–08 (Em.Ct.App.1978) (Zirpoli, J., dissenting); *National Motor Freight Traffic Ass'n v. United States,* 268 F.Supp. 90, 96 (D.D.C.1967) (three judge court), *aff'd per curiam,* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968). Of these courts, some have framed the substantial impact test as a way of distinguishing between interpretative and substantive (or legislative) rules. If a rule has substantial impact, it cannot be merely interpretative and therefore must be subjected to the public notice and comment requirements of Section 553. *See, e.g., Pharmaceutical Manufacturers,* 307 F.Supp. at 863; *Energy Reserves,* 589 F.2d at 1102–03 (Christensen, J., concurring). Other courts have applied the substantial impact test to subject even concededly interpretative rules to public notice and comment, reasoning that the policy behind the APA would require it. *See Rivera v. Patino,* 524 F.Supp. 136 (N.D.Cal.1981), *rev'd,* 714 F.2d 887 (9th Cir.1983), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984).

Plaintiffs, in their amended complaint and their opposition papers, stress the substantial impact of the Rule on each of the plaintiffs as well as on the country in general. Plaintiffs point to the profound industrial development engendered by the Plant Patent Act of 1930, 35 U.S.C. Section 161 *et seq.* and the multi-billion dollar industry that has sprung up around the extension of patent protection to single-cell micro-organisms in *Diamond v. Chakrabarty,* 447 U.S. 303, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980).

The Ninth Circuit, however, has unequivocally rejected the substantial impact test. "[C]ourts are not to engraft 'their own notions of proper procedures upon agencies' beyond the requirements of Section 553. [*Vermont Yankee Nuclear Power*

*Corp. v. National Resources Defense Council, Inc.,*] 435 U.S. [519,] 525, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 [ (1978) ]. Thus, in view of the express exemption in Section 553 and the admonition in *Vermont Yankee,* we reject the substantial impact test...." *Rivera,* 714 F.2d at 891. "Simply because agency action has substantial impact does not mean it is subject to notice and comment if it is otherwise exempt under the APA." *Id.* at 890 (citation omitted).

Instead, the Ninth Circuit has adopted the following formulation for distinguishing interpretative rules from substantive ones:

> Substantive rules are those which effect a change in existing law or policy. These are rules which create law and are usually implementary to an existing law, incrementally imposing general, extra-statutory obligations pursuant to authority properly delegated by the legislature.... Interpretative rules are those which merely clarify or explain existing law or regulations. These rules are essentially hortatory and instructional in that they go more to what the administrative officer thinks the statute or regulation means when applied in particular, narrowly defined, situations. By merely clarifying the law's terms as applied situationally, interpretative or administrative-type rules are usually more for discretionary fine-tuning than for general law making.

*Alarcaz,* 746 F.2d at 613.

■ Here, the PTO asserts that the Rule is consummately interpretative. According to the PTO, the Rule merely synthesizes the decisional law that it cites. The Rule neither abridges nor enlarges the rights of plaintiffs or anyone else because the decisional law that it synthesizes would remain in effect with or without the Rule. Nothing in the Rule impedes one accused of infringing a patent of this type from defending an infringement suit on the ground that the patent involved does not claim subject matter within the scope of 35 U.S. C. Section 101. The Rule has neither precedential nor statutory effect.

In short, the PTO's position is that, because the patent statute requires the Commissioner to examine every patent application filed, 35 U.S.C. Section 131, and because the decisional law is what it is, the issuance of patents on non-naturally occurring, non-human living multicellular organisms, including animals, is not affected by promulgation or repeal of the Rule. Rather, the Rule is merely a notice to the public of the relevant precedent that will be considered in patent applications of this type. It is hortatory and has no mandatory effect.

This is a credible and viable position. One does not need to look far to discover how the Rule is synthesized from the precedent it cites. In *Chakrabarty,* the Supreme Court had before it the question of whether the patent statute, 35 U.S.C. Section 101, authorized the patenting of single-cell organisms. The Court held that "the language of [35 U.S.C. Section 101] fairly embraces respondent's invention" of a non-naturally occurring single-cell microorganism. 447 U.S. at 318, 100 S.Ct. at 2212. Yet the Court did not do so in narrow terms. Rather than refer only to "microorganisms" or "bacteria," the Court referred to "organisms," "living things" and "living organisms." 447 U.S. at 314, 318, 100 S.Ct. at 2210, 2212. Moreover, the Court stated "that Congress intended the statutory subject matter to include anything under the sun that is made by man." 447 U.S. at 309, 100 S.Ct. at 2208; therefore, the interpretation of *Chakrabarty* as having application beyond unicellular organisms is a fair one.

In *Ex Parte Allen,* the issue was the patentability of polyploid oysters. The applicant sought to patent a method of inducing polyploidy in oysters as well as the resulting oysters as products-by-process. Although the patent was denied on other grounds, the BPAI held that a genetically altered oyster was patentable subject matter under 35 U.S.C. Section 101. The BPAI interpreted *Chakrabarty* to stand for the proposition that the patentable subject matter under Section 101 "includes man-made life forms." 2 U.S.P.Q.2d 1425, 1426–27

(BPAI 1987); *see also Ex Parte Hibberd,* 227 U.S.P.Q. 443 (BPAI 1985).

It is true that these decisions are those of an arm of the PTO itself; that is neither unusual nor inappropriate. *Allen, Hibberd* and all other rulings of the BPAI represent administrative decisional law made pursuant to authority properly delegated by Congress. *See* 35 U.S.C. Section 7. Whether those cases were correctly decided and whether their holdings are within the PTO's substantive statutory authority are separate matters that are not, and cannot be, before this Court. The question here is whether a rule interpreting an agency's own (agency-made) law qualifies as interpretative. The answer is yes; that is one of the most useful functions of an interpretative rule. The case law is in agreement. In *Alarcaz,* the Ninth Circuit expressly held that "interpretative rules ... explain ... existing law *or regulations.*" 746 F.2d at 613 (emphasis added).

These BPAI decisions were the law at the time the Rule was promulgated. They are still the law. Moreover, these decisions hold precisely what the Rule states: that non-naturally occurring, non-human multicellular living organisms, including animals, are patentable subject matter under 35 U.S.C. Section 101.

This Court therefore concludes that the Rule promulgated by the PTO on April 7, 1987 is an interpretative rule as that term is used in 5 U.S.C. Section 553(b)(A) and is thereby exempt from the public notice and comment requirements of the APA. Furthermore, because the PTO is authorized to issue such rules or "notices," 5 U.S.C. Section 553, and because the Rule neither abridges nor enlarges the rights of anyone, the PTO could not, as a matter of law, have exceeded its statutory authority in promulgating it. Whether *Allen* itself or any actual "animal" patents issued to applicants under *Allen* and *Chakrabarty* exceed the PTO's authority under 35 U.S.C. Section 101 is a different question and one that is not raised by this action. It is an important question, and this Court is sensitive to its possible ramifications. This action, however, presents no opportunity to decide it.

For the reasons stated above, defendants' motion to dismiss is GRANTED IN ITS ENTIRETY and judgment shall issue in their favor.

SO ORDERED.