736 F.2d 933
 5 Employee Benefits Ca 1926, Unempl.Ins.Rep. CCH 21,731
Geraldine WATKINS, on behalf of herself and all others
similarly situated, Appellants,
v.
Ralph G. CANTRELL, Commissioner Virginia Employment
Commission; Jerry Lawson, Department Commissioner,
Unemployment Division; Joseph Hayes, Director Unemployment
Division; Grace Dowdy, Benefits Chief, Appellees.
 No. 83-1866.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 8, 1984.
Decided June 6, 1984.
 
 William L. Botts, III, Rappahannock Legal Services, Fredericksburg, Va., for appellants.
 Gerald L. Baliles, Atty. Gen., Paul J. Forch, Sr., Asst. Atty. Gen., and Robert J. Barry, Asst. Atty. Gen., Richmond, Va., for appellees.
 Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and PECK,* Senior Circuit Judge.
 JOHN W. PECK, Senior Circuit Judge:
 
 
 1
 This is an action challenging, on federal statutory and constitutional grounds, the Virginia pension offset provision which provides that unemployment insurance benefits are to be reduced or offset by the amount of any benefits received from social security, private or public pension, or other similar periodic payment based upon a claimant's previous employment. Va.Code Sec. 60.1-48.1.[1] The principal issue on appeal is whether Congress, by amending in 1980 the federal pension offset provision, 26 U.S.C. Sec. 3304(a)(15),[2] precluded states from broadening the scope of the offset of pension benefits beyond that mandated by the Federal Unemployment Tax Act (FUTA), 26 U.S.C. Sec. 3301 et seq. The district court held that the Virginia pension offset provision did not contravene federal law and granted summary judgment for the defendants. 568 F.Supp. 1225 (E.D.Va.1983). We affirm.
 
 I. Facts
 
 2
 Geraldine Watkins is sixty years old, retired, and a resident of Virginia. Upon her retirement in 1972, Watkins received a civil service disability retirement pension from the United States government. Since then, Watkins has continued to receive this monthly pension without interruption. In August 1980, due to her need for additional income, Watkins took a job as a nursing assistant, earning approximately $160 per week. Watkins was terminated from her job in June 1981. She subsequently filed for unemployment insurance benefits through the Fredericksburg, Virginia office of the Virginia Employment Commission (VEC). The local VEC office issued two notices to Watkins on July 31, 1981: in the first, VEC determined that Watkins was not disqualified from eligibility for unemployment insurance benefits; in the second, VEC determined that, pursuant to the Virginia pension offset provision, Watkins's $78 weekly unemployment benefits should be offset by the weekly amount of her pension, $76, resulting in Watkins's entitlement to $2 weekly unemployment insurance benefits. Watkins exhausted all state administrative remedies prior to bringing this suit contesting the offset.
 
 
 3
 Watkins, on behalf of herself and all others similarly situated, initiated the action against Ralph G. Cantrell, Commissioner of VEC, and three other VEC officials by filing a complaint in the District Court for the Eastern District of Virginia. In the complaint, Watkins alleged that the Virginia pension offset provision and the policy implementing that provision violated the pension offset provision of FUTA, 26 U.S.C. Sec. 3304(a)(15), and the "when due" provision of the Social Security Act, 42 U.S.C. Sec. 503(a)(1).[3] Watkins also alleged that the actions of the defendants in implementing the Virginia pension offset provision violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment and 42 U.S.C. Sec. 1983.
 
 
 4
 Following certification of a class,[4] the district court ruled on Watkins's claims in an opinion on cross-motions for summary judgment. 568 F.Supp. 1225 (E.D.Va.1983). Based on its review of the language of the pension offset provision of FUTA, 26 U.S.C. Sec. 3304(a)(15), and its legislative history, the court held that Sec. 3304(a)(15) established a minimum offset requirement that individual states could, but were not required to, exceed in order to be eligible for federal certification. Id. at 1227-28. Accordingly, the court concluded that in offsetting pension benefits in excess of those required to be offset by Sec. 3304(a)(15), the Virginia pension offset provision did not contravene FUTA. The court then determined that the FUTA claim was the linchpin underlying all of Watkins's remaining claims and granted summary judgment for the defendants on all claims. Id. at 1228.
 
 II. Statutory Background
 
 5
 Unemployment insurance in this country has been a joint federal-state undertaking since first established under Title IX of the Social Security Act of 1935. Cabais v. Egger, 690 F.2d 234, 235 (D.C.Cir.1982). See generally Steward Machine Co. v. Davis, 301 U.S. 548, 574-78, 57 S.Ct. 883, 884-87, 81 L.Ed. 1279 (1937) (discussing genesis of unemployment insurance program and statutory mechanism). In general, Congress has afforded great discretion to the states in the design and operation of their unemployment insurance programs, particularly in the establishment of benefit structures and qualifying requirements. New York Telephone Co. v. New York State Department of Labor, 440 U.S. 519, 537-40, 99 S.Ct. 1328, 1339-41, 59 L.Ed.2d 553 (1979); S.Rep. No. 472, 96th Cong., 1st Sess. 11 (1979) [hereinafter Senate Report]. Congress, however, has established a limited number of "fundamental standards" that states must meet in order to receive the benefits of federal certification of their programs. Brown v. Porcher, 660 F.2d 1001, 1004 (4th Cir.1981), cert. denied, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983); McKay v. Horn, 529 F.Supp. 847, 850-51 (D.N.J.1981); H.R.Rep. No. 538, 96th Cong., 1st Sess. 2-3 (1979) [hereinafter House Report]; Senate Report at 11. Among the "fundamental standards" with which states must comply is the pension offset requirement set forth in Sec. 3304(a)(15). McKay v. Horn, supra, 529 F.Supp. at 850 n. 4; H.R.Rep. No. 1343, Conference Report on H.R. 3904, Multiemployer Pension Plan Amendments Act of 1980, 96th Cong., 2d Sess., 126 Cong.Rec. 26,146-47 (1980) [hereinafter Conference Report], U.S.Code Cong. & Admin.News 1978, 2918.
 
 
 6
 Prior to 1976, some states allowed retired individuals who received social security or public or private pensions to receive unemployment insurance benefits even though they actually had withdrawn from the labor force. S.Rep. No. 1265, 94th Cong., 2d Sess. 21-22 & n. 1 (1976), reprinted in 1976 U.S.Code & Cong.Ad.News 5997, 6015-16. In response, Congress enacted Sec. 3304(a)(15) in 1976 to require, effective September 30, 1979, all states to offset an individual's unemployment insurance compensation by the amount of any public or private pension or other similar periodic retirement payment, including social security and railroad retirement benefits, based on the individual's previous employment. Pub.L. 94-566, 90 Stat. 2667 (1976). See Cabais v. Egger, supra, 690 F.2d at 236; H.R.Conf.Rep. No. 1745, 94th Cong., 2d Sess. 16, reprinted in 1976 U.S.Code & Cong.Ad.News 6032, 6040. The effective date of the section subsequently was delayed six months until March 31, 1980, Pub.L. 95-19, 91 Stat. 45 (1977), because of Congressional concern that the pension offset provision, as originally enacted, had been drawn too broadly. See, e.g., Senate Report at 3; 126 Cong.Rec. 4,561 (1980) (remarks of Sen. Boren).
 
 
 7
 In 1977, the Virginia legislature enacted the Virginia pension offset provision, Va.Code Sec. 60.1-48.1, to bring Virginia's unemployment compensation program into conformity with Sec. 3304(a)(15) as enacted in 1976. The Virginia pension offset provision by its own terms became effective September 30, 1979. Since that time, VEC has offset from unemployment insurance compensation all pension and retirement benefits attributable to previous work, with limited exceptions.
 
 
 8
 In 1979, legislation to limit the scope of the federal pension offset requirement enacted by Congress in 1976 was introduced in both houses. Under the sponsorship of, among others, Representative Corman, H.R. 5507, 126 Cong.Rec. 2,146 (1980), was introduced in the House of Representatives "with the objective of limiting the scope of the Federal [pension offset] requirement and thereby providing the States with greater flexibility in their treatment of pension or retirement income." House Report at 4. Following passage by the House on February 6, 1980, H.R. 5507 was referred to the Senate Committee on Finance. 126 Cong.Rec. 2,149 (1980). In the Senate, H.R. 4612 was amended by the Committee on Finance to include a pension offset provision identical to that of H.R. 5507. Senate Report at 2-3, 11-12. On March 4, 1980, the Senate passed H.R. 4612, as amended. 126 Cong.Rec. 4,575 (1980). No conference was held on either bill and no amendment of the 1976 federal pension offset requirement was passed until after the March 31, 1980 deadline.
 
 
 9
 On July 29, 1980, the Senate passed an amendment to the Multiemployer Pension Plan Amendments Act of 1980, H.R. 3904, providing for a limited pension offset requirement that was identical, except for the effective date, to the pension offset requirements of H.R. 5507 and H.R. 4612, as amended. 126 Cong.Rec. 20,247, 20,276 (1980). The pension offset provision subsequently was amended, but finally was enacted by Congress on September 26, 1980. Pub.L. 96-364, 94 Stat. 1310 (1980).
 
 III. Compliance with FUTA
 
 10
 Watkins's principal argument is that FUTA's pension offset provision, 26 U.S.C. Sec. 3304(a)(15), as amended in 1980, authorizes states to offset pension or retirement payments from unemployment insurance benefits only where the pension or retirement payments are attributable to or affected by employment with a "base period" employer.[5] In making the argument, Watkins relies upon her construction of the "plain meaning" and the legislative history of the statute.
 
 
 11
 Defendants' position, which was adopted by the district court, is that Sec. 3304(a)(15) only establishes a minimum pension offset requirement that states, at their option, may exceed. Like Watkins, defendants cite the "plain meaning" and the legislative history of the statute in support of their position; unlike Watkins, however, defendants rely on the interpretation given the statute by the Secretary of Labor. Unemployment Insurance Program Letter (UIPL) No. 7-81 (Nov. 7, 1980), 47 Fed.Reg. 29,904, 29,905 (1982); UIPL No. 7-81 Change 1 (June 9, 1981), 47 Fed.Reg. 29,904, 29,908 (1982); UIPL No. 7-81 Change 2 (Mar. 11, 1983), 48 Fed.Reg. 37,740 (1983). See Cabais v. Egger, supra, 690 F.2d at 238-39 (UIPL No. 7-81 is interpretative in nature with the exception of UIPL No. 7-81 Change 1, Sec. 5); Peare v. McFarland, 577 F.Supp. 791, 793 (N.D.Ind.1984) (relying on Secretary's interpretation as expressed in UIPL No. 7-81).
 
 A. Language of Statute
 
 12
 Because the question confronting this court is one of statutory interpretation, we must first turn to the language of the statute. Matala v. Consolidation Coal Co., 647 F.2d 427, 429 (4th Cir.1981). Section 3304(a)(15) expressly provides that the requirement that states offset pension, retirement or other similar periodic payments from unemployment insurance compensation is applicable only if both the pension or retirement benefit is paid under a plan maintained or contributed to by a base period or chargeable employer and, with the exception of Social Security or Railroad Retirement Benefits, services performed for such employer after the beginning of the base period "affect the eligibility for, or increase the amount of," the pension or retirement benefits. 26 U.S.C. Sec. 3304(a)(15). See Rivera v. Becerra, 714 F.2d 887, 894 (9th Cir.1983), cert. denied sub nom. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, --- U.S. ----, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984); Peare v. McFarland, supra, 577 F.Supp. at 793. Section 3304(a)(15)(B) exempts states from this requirement to the extent that the state determines to take into account an unemployment insurance compensation claimant's contributions for the pension or retirement payment. See Bowman v. Stumbo, 735 F.2d 192 at 197 (6th Cir.1984); Cabais v. Egger, supra, 690 F.2d at 239.
 
 
 13
 Contrary to Watkins's suggestion, this language, which requires states to offset pension benefits from unemployment compensation only if certain conditions are met, is not tantamount to a prohibition of offsets whenever the conditions are not met. Section 3304(a)(15) nowhere explicitly prohibits states from offsetting from unemployment insurance compensation pension or retirement payments in excess of the mandated offset. The absence of such an explicit prohibition in the language of the statute clearly indicates that no such prohibition was intended by Congress. As the Supreme Court has stated concerning a related matter, "the absence of such an explicit condition [is] a strong indication that Congress did not intend to restrict the States' freedom to legislate in this area." New York Telephone Co. v. New York State Department of Labor, supra, 440 U.S. at 538, 99 S.Ct. at 1340 (construing Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977) (footnote omitted). Accordingly, our review of the language of the statute leaves us with the firm conviction that Congress did not preclude states from offsetting pension or retirement payments from unemployment insurance compensation in excess of that mandated by Sec. 3304(a)(15) when it amended that section in 1980. See Cabais v. Egger, supra, 690 F.2d at 240 (impact of states' law varies "depending on whether a state chooses to exceed federal minimum standards"); McKay v. Horn, supra, 529 F.Supp. at 856 (Sec. 3304 contains only minimum requirements and states are free to set broader offset provisions); Rivera v. Patino, 524 F.Supp. 136, 140 (N.D.Cal.1981) ("Federal law sets forth minimum eligibility requirements, but a state is free to impose stricter requirements. Thus, under the new statute, states must offset certain pensions against unemployment insurance benefits in order to maintain federal certification, but if Congress were to repeal the pension offset provision, the state ... could still enact and enforce an identical provision."), aff'd in part & rev'd in part sub nom. Rivera v. Becerra, 714 F.2d 887 (9th Cir.1983), cert. denied sub nom. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Donovan, --- U.S. ----, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984). Contra In re Cullen, 93 A.D.2d 907, 461 N.Y.S.2d 592 (1983).
 
 
 14
 Watkins also suggests that our construction of the amendment of Sec. 3304(a)(15) in 1980 is such a narrow reading that it has little, if any, force. We do not agree. Quite simply, the 1980 amendment permitted states to refrain from offsetting substantial amounts of pension and other retirement income if the states so chose. See, e.g., 126 Cong.Rec. 23,044 (1980) (remarks of Rep. Davis & Rep. Corman); id. 23,048 (remarks of Rep. Biaggi).
 
 B. Legislative History
 
 15
 Watkins contends that even if the prohibition of pension offsets in excess of that mandated is not clear from the "plain meaning" of Sec. 3304(a)(15), it becomes so upon resort to the section's legislative history. In part, Watkins relies on the comments of a number of senators concerning the pension offset provision of H.R. 4612. 126 Cong.Rec. 4,561 (1980) (remarks of Sen. Boren); id. 4,562 (remarks of Sen. Dole); id. 4,565 (remarks of Sen. Moynahan); id. 4,566-67 (remarks of Sen. Javits); id. 4,570 (remarks of Sen. Boren). Watkins argues that the general tone of these comments indicates that the Senate was acting to protect retired employees by assuring that pension offsets would be limited to base-period employment situations. Watkins relies principally, however, on the comments of Senators Chafee, Bradley, and Boren on the pension offset provision of H.R. 3904, which, as amended, ultimately was enacted as 26 U.S.C. Sec. 3304(a)(15). 126 Cong.Rec. 20,237-38 (remarks of Sen. Chafee) ("[The Senate amendment] modifies the existing law to require that the reduction of unemployment compensation benefits is only required [sic] if the pension comes from the last employer. In addition, States would be given the option to limit the offset to the portion of the pension contributed to by the employer."); id. 20,238 (remarks of Sen. Bradley) (offsetting unemployment insurance benefits by pension benefits dollar for dollar, as required by 1976 amendment, "is not a fair way to conduct business."); id. 20,241 (remarks of Sen. Boren) (mandatory pension offset "is an injustice in the present law that needs to be corrected. Some people are being treated unfairly by it."); id. 26,040 (remarks of Sen. Bradley) (examples of offset of pension under 1980 amendment do not provide for states offsetting pensions in excess of that mandated). Watkins contends that these comments conclusively demonstrate that Congress, by amending Sec. 3304(a)(15) in 1980, prohibited states from offsetting pensions in excess of that mandated.
 
 
 16
 We do not agree that the legislative history compels the construction of Sec. 3304(a)(15) advanced by Watkins. As an initial point, we note that Watkins has cited no explicit statement in the legislative history of Sec. 3304(a)(15) that states are prohibited from offsetting pension benefits from unemployment insurance compensation in excess of that mandated; nor has our review of the legislative history unearthed any such statement. The legislative history does contain, however, explicit statements recognizing that states retain the power to offset pension benefits in excess of that mandated. Perhaps the clearest indication that states retain this power is contained in the responses of Representative Corman to questions by Representative Pickle concerning H.R. 5507:
 
 
 17
 Mr. PICKLE. Mr. Chairman, I would like to pose a question concerning the treatment of social security beneficiaries under this bill.
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 Mr. CORMAN. The gentleman from Texas raises an important point and I am glad to have an opportunity to respond to his question.
 
 
 21
 Under the bill, in the case of a social security beneficiary, a State would only be required to reduce his unemployment insurance payment if his employment during his base period would increase the amount of his social security benefits. The amount of reduction in such cases could be at the rate of 50 percent of the person's social security payment since the bill also allows the States to provide for limitations on the amount of the reduction to take into account the contributions made by the individual toward the financing of his retirement payment.
 
 
 22
 Mr. PICKLE. The gentleman states that a reduction in an individual's unemployment payments would have to be made only if his employment during the base period increases his social security payments. This would be a very difficult determination for the state employment security agencies to make.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 As a practical matter are the State's [sic] going to be able to go into these matters in applying their offset?
 
 
 26
 Mr. CORMAN. States woul [sic] be free to do it if they choose. We have established a minimum requirement in this bill which will treat social security beneficiaries equitably in relation to recipients of private pension. We have required States to provide an offset only where an individual's work during the base period actually increases the amount of his or her pension, whether the pension be social security or a private pension. If a State, for whatever reason, including administration, wishes to adopt a broader offset for social security or private pensions, it is free to do so under this bill. Of course, if we do not pass H.R. 5507, a law will become effective which will require States to offset all social security benefits in all cases. Without passage of this legislation, we will effectively bar all social security recipients from ever collecting unemployment compensation.
 
 
 27
 126 Cong.Rec. 2,144 (1980). The comments made by Representative Corman were not isolated remarks indicating only one congressman's conception of the application of the limited offset pension provision. The report from the Committee on Ways and Means on H.R. 5507 stated explicitly that "[t]he treatment of any pension or retirement income maintained or contributed to by an employer other than a 'base-period' or 'chargeable' employer would be left to State law." House Report at 4. The following exchange between Representatives Hopkins and Frenzel also indicates that states could, if they chose, retain broader offset provisions than those mandated by the proposed change:
 
 
 28
 Mr. HOPKINS. I thank my colleague for yielding. Would it be correct to assume that if the present law is changed that some States may eliminate or reduce the pension offset laws that they have already put in place in anticipation of the new law taking effect? In effect, no pension offset amounts to double-dipping.
 
 
 29
 Mr. FRENZEL. In my judgment, what the gentleman says is true.
 
 
 30
 126 Cong.Rec. 2,145 (1980). See also id. 2,144 (remarks of Rep. Rousselot) ("The price tag on this bill, according to our Congressional Budget Office is $585 million between now and the end of fiscal year 1984, assuming States follow the most liberal course open to them under this bill.") (emphasis added). The extent and the clarity of these statements indicates that the pension offset provision of H.R. 5507, which, as noted above, is essentially identical to that enacted by Congress in H.R. 3904, was intended to permit states to offset pension and retirement payments in excess of that mandated by FUTA.
 
 
 31
 The legislative history indicating that states would retain the power to offset pension benefits in excess of that mandated is not limited to H.R. 5507. Several of the Senators who commented on H.R. 4612 recognized that amending Sec. 3304(a)(15) would allow states to retain considerable control in the structuring of their benefit provisions. 126 Cong.Rec. 4,566 (1980) (remarks of Sen. Javits) ("A [pension offset provision] should be imposed on the States only if Congress decides that detailed benefit provisions in State laws should be mandated in Federal law, including benefit eligibility, amount, duration, and disqualification."); id. 4,570 (remarks of Sen. Boren) (urging support for "a philosophy in opposition to mandating too many things to the States, leaving some flexibility to the States.") Additionally, the First Interim Report of the National Commission on Unemployment Compensation, November 1978, portions of which were printed in the Congressional Record at the instance of Senator Javits, clearly recognized that states would be free to alter their own laws as they saw fit if the mandatory pension offset were repealed. 126 Cong.Rec. 4,567, 4,568 (1980) ("The Commission accordingly recommends to the President and the Congress that Section 3304(a)(15) of the Federal Unemployment Tax Act be repealed. States should carefully review present provisions of State law if the Federal requirement is repealed.") (emphasis added).
 
 
 32
 Finally, in debate on the pension offset provision attached to H.R. 3904, there was a clear recognition that the amendment of Sec. 3304(a)(15) would only reduce a requirement imposed on the states. 126 Cong.Rec. 23,048 (1980) (remarks of Rep. Biaggi) ("States would only be required to decrease unemployment benefits when a recipient's pension is provided by a 'base period' employer."); id. 23,049 (remarks of Rep. Ullman) ("Among the Senate changes that would be accepted under the motion are three provisions relating to unemployment compensation. The first would modify the Federal law that took effect on April 1 of this year requiring States to reduce a person's unemployment compensation benefits by the amount of any work-related retirement or pension income the person is receiving."). See also Conference Report, supra, 126 Cong.Rec. 26,147 ("The Senate amendment numbered 1 to the House amendment to the Senate amendment to the bill provides that the pension offset requirement of existing law would only apply to pensions paid under plans maintained or contributed to by base period or chargeable employers..... The conference agreement generally follows the Senate amendment."). Additionally, Congress clearly recognized that states, which offset all pension benefits as then-required by FUTA, would have to enact conforming legislation in order to take advantage of the reduction of the pension offset requirement contained in H.R. 3904:
 
 
 33
 Mr. DAVIS of Michigan. Mr. Speaker, I would like to engage someone on either side of the aisle to answer a couple of questions about an amendment that was offered and accepted over in the Senate that now stands in the bill which involves a very important problem in my State of Michigan. It involves the question of military retirees being able to receive unemployment benefits when they take another job. It goes back to the original bill that had the date of April 1 in it, and our State was not one of the States that was in compliance. They subsequently passed a bill which puts them in compliance with the Federal law.
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 Mr. CORMAN. I thank the gentleman for yielding.
 
 
 37
 * * *
 
 
 38
 * * *
 
 
 39
 I had not been aware of the particular problem the gentleman mentions. The gentleman is aware that the effective date in this provision was drafted by the Senate, and I am told there is some disagreement as to the intent. But I have been told that the Department's initial interpretation was that it would not allow the retroactive payment of benefits.
 
 
 40
 I must say that this entire pension offset has been very unfair and unfortunate.
 
 
 41
 Mr. DAVIS of Michigan. I certainly agree with the gentleman, and I do support that. But you see what the problem is. These particular people--and I just happen to have a number of them laid off the last Sunday in June--are not qualified for unemployment benefits, and I am wondering if the State passes a bill, and I am sure the State will, there is already a bill in the hopper to do this, at what point in time will they be able to start drawing unemployment benefits?
 
 
 42
 It would seem to me that they ought to be able to draw those benefits from the qualified date, as any other worker would.
 
 
 43
 Mr. CORMAN. I would think that the State would be able to implement this provision upon the effective date of this bill, assuming it passes and is signed by the President, and possibly earlier.
 
 
 44
 Also, I should call to the gentleman's attention the fact that the provision of current law is not a disqualification but a pension offset. I realize that, if the pension is sufficiently large, it may be a total offset.
 
 
 45
 126 Cong.Rec. 23,044 (1980). The recognition by Representatives Davis and Corman that states could decline to alter their pension offset provisions even if Congress reduced FUTA's required pension offset, as it did by amending Sec. 3304(a)(15), indicates clearly that Congress was not imposing on the states both a maximum and a minimum pension offset requirement when in 1980 it amended Sec. 3304(a)(15).
 
 
 46
 In short, although some remarks may have been rather broadly phrased by individual congressmen with respect to the effect of the reduction of the pension offset requirement, the legislative history of Sec. 3304(a)(15) demonstrates that states are free to offset pension and retirement benefits from unemployment insurance benefits in excess of that required by the federal statute.
 
 C. Administrative Interpretation
 
 47
 In administering Virginia's unemployment insurance compensation program, defendants have relied upon the Secretary of Labor's interpretation of Sec. 3304(a)(15) in UIPL No. 7-81. The following portion of UIPL No. 7-81 is of particular relevance:
 
 
 48
 State laws which now provide for the deduction of pension payments in the circumstances prescribed by the Federal law prior to these amendments are not required to take further action in order to satisfy the requirements in the new amendments. However, we strongly recommend that States proceed now to take advantage of the less stringent condition under which pensions must be deducted from unemployment benefits pursuant to the Federal law requirements.
 
 
 49
 Section 3304(a)(15), FUTA as amended by P.L. 96-364, reflects only the minimum conditions under which deduction must be required by State law for certification under FUTA. Although a State may broaden the scope of its deduction of pension payments beyond the conditions in which deduction is required under the Federal law, it may not adopt less stringent conditions which fall short fo [sic] the Federal requirement.
 
 
 50
 47 Fed.Reg. 29,906 (1982). Watkins contends that the defendants erred in relying on the Secretary's interpretation because the interpretation does not warrant deference due to its asserted inconsistency with the language and the purpose of Sec. 3304(a)(15). We do not agree.
 
 
 51
 The issue of the nature of the rules enunciated in UIPL No. 7-81 has been considered by several courts. Rivera v. Becerra, supra, 714 F.2d at 889-91; Cabais v. Egger, supra, 690 F.2d at 237-39; Peare v. McFarland, supra, 577 F.Supp. at 793. In Cabais v. Egger, the Court of Appeals for the District of Columbia held that, with one exception not relevant here,[6] the rules enunciated in UIPL No. 7-81 are interpretative in nature and merely construe the language and intent of Sec. 3304(a)(15). 690 F.2d at 238-39. Accord Rivera v. Becerra, supra, 714 F.2d at 889 & n. 1; Peare v. McFarland, supra, 577 F.Supp. at 793.
 
 
 52
 As an initial point of reference, we recognize that the interpretation of a statute by the agency charged with its enforcement "ordinarly commands considerable deference." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 107, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66 (1979). See Commonwealth of Virginia ex rel. Coleman v. Califano, 631 F.2d 324, 327 (4th Cir.1980); York v. Federal Home Loan Bank Board, 624 F.2d 495, 499 (4th Cir.), cert. denied, 449 U.S. 1043, 101 S.Ct. 621, 66 L.Ed.2d 504 (1980). The role of interpretative rules in the construction and interpretation of statutes was articulated perhaps most comprehensively in Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944):
 
 
 53
 We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.
 
 
 54
 Accord General Electric Co. v. Gilbert, 429 U.S. 125, 141-42, 97 S.Ct. 401, 410-11, 50 L.Ed.2d 343 (1976); Brown v. Porcher, supra, 660 F.2d at 1004-05.
 
 
 55
 The rules enunciated in UIPL No. 7-81 are entitled to considerable weight under these standards. First, UIPL No. 7-81 was issued virtually contemporaneously with the enactment of Sec. 3304(a)(15) and, as such, "is entitled to great weight." E.I. du Pont de Nemours & Co. v. Collins, 432 U.S. 46, 55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977) (quoting FTC v. Mandel Bros., 359 U.S. 385, 391, 79 S.Ct. 818, 823, 3 L.Ed.2d 893 (1959)). Second, the Secretary has not wavered in adherence to the interpretation of Sec. 3304(a)(15) as establishing a minimum pension offset requirement that states may exceed. See UIPL No. 7-81 Change 2 (Mar. 11, 1983), 48 Fed.Reg. 37,74 0, 37,741 (1983) (states encouraged to offset employee pension benefits in connection with employee contributions in excess of that mandated by Department of Labor). This consistency is a significant factor in determining the weight to be accorded the Secretary's interpretation. See General Electric Co. v. Gilbert, supra, 429 U.S. at 142-43, 97 S.Ct. at 411-12. Third, the reasoning of the Secretary in UIPL No. 7-81 is valid in light of the analysis of the language and the legislative history of the statute presented in the preceding subsections. Cf. Rivera v. Becerra, supra, 714 F.2d at 896 (different aspect of UIPL No. 7-81 upheld as correct); Peare v. McFarland, supra, 577 F.Supp. at 795 (different aspect of UIPL No. 7-81 upheld as correct). Accordingly, in light of our discussion in the preceding subsections, we conclude that the Secretary's interpretation is entitled to deference and that the defendants did not err in relying upon it.
 
 
 56
 In the alternative, even if we concluded that the language of the statute and its legislative history fell short of providing a clear indication that states retain the authority to offset pension benefits in excess of that mandated by Sec. 3304(a)(15), we would accord deference to the interpretation of the Secretary and affirm the decision of the district court. As this court stated in West Virginia v. Secretary of Education, 667 F.2d 417, 420 (4th Cir.1981), where the language and legislative history of a statute does not indicate which interpretation of a statute is proper, courts "give deference to an agency's interpretation of a statute governing it and its own regulations." Because the language and the legislative history do not compel a contrary conclusion, the Secretary's interpretation in UIPL No. 7-81 would warrant our affirming the judgment of the district court. Cf. Ford Motor Credit Co. v. Cenance, 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981) (agency regulations entitled to deference where not inconsistent with statutory language or legislative intent).
 
 D. Summary
 
 57
 This court has recognized as a canon of statutory interpretation the principle that where "neither legislative history nor administrative interpretation sheds clear light on the meaning of an ambiguous statute, a court is bound only to render a decision that is reasonable in light of the overall policy of the legislation under consideration and the commonly accepted meaning of the words used in the statute." Anderson v. Babb, 632 F.2d 300, 308 (4th Cir.1980) (per curiam). If we had found Sec. 3304(a)(15) ambiguous and its legislative history and administrative interpretation unilluminating, we nevertheless would have been compelled to hold that the district court's construction of the section was reasonable in light of Congress's expressed purpose of reducing the pension offset requirement. Cf. Peare v. McFarland, supra, 577 F.Supp. at 795. However, where, as here, the district court's construction of the statute is dictated by its unambiguous language and is consistent with both legislative history and administrative interpretation, we need not rely on abstract principles of statutory interpretation to uphold the district court's construction as a proper interpretation of "the words of the [statute] in light of the purposes Congress sought to serve." Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979). See also Ford Motor Credit Co. v. Cenance, 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981) ("Absent a clear indication of legislative intent to the contrary, the statutory language controls its construction. In addition, the regulations promulgated by the governmental body responsible for interpreting or administering a statute are entitled to considerable respect...."). Accordingly, based on our review of the language of Sec. 3304(a)(15), its statutory history and its administrative interpretation, we conclude that the district court correctly held that the Virginia pension offset provision, Va.Code Sec. 60.1-48.1, did not contravene the Federal pension offset requirement, 26 U.S.C. Sec. 3304(a)(15), and properly granted summary judgment for the defendants on the statutory issue.
 
 IV. Constitutional Issues
 
 58
 Although, as noted above, the district court held that the constitutional issues raised by Watkins were dependent for their force on the statutory issues and that once the statutory issues were disposed of, judgment on the constitutional issues was proper, we follow another route in determining that Watkins's constitutional issues lack merit.
 
 A. Equal Protection
 
 59
 Watkins contends that the Virginia pension offset provision violates the Equal Protection Clause of the Fourteenth Amendment because by treating unemployment compensation claimants who receive pension or other retirement payments more harshly than other unemployment compensation claimants, the provision creates an arbitrary, irrational and invidious classification. We do not agree.
 
 
 60
 Where a state's unemployment insurance compensation statute neither involves a discernible fundamental interest nor affects any protected class with particularity, the relatively relaxed "rational-basis" standard should be applied in determining whether the statute violates the Equal Protection Clause. Ohio Bureau of Employment Services v. Hodory, supra, 431 U.S. at 489, 97 S.Ct. at 1908; Rivera v. Becerra, supra, 714 F.2d at 895; McKay v. Horn, supra, 529 F.Supp. at 861. Under this standard, if a state statute bears "a rational relation to a legitimate state interest", the statute does not violate the Equal Protection Clause. Ohio Bureau of Employment Services v. Hodory, supra, 431 U.S. at 489, 97 S.Ct. at 1908; Rivera v. Becerra, supra, 714 F.2d at 895.
 
 
 61
 Although defendants do not articulate on appeal what state interests are advanced by the Virginia pension offset provision, the record indicates that alteration of the Virginia provision in the manner urged by Watkins would result in additional administrative costs and an increased tax to Virginia employers to cover the cost of the additional benefits. Because ease of administration and preservation of the financial integrity of a state's unemployment insurance compensation program are legitimate state interests that can justify the classifications created by the Virginia pension offset provision, we cannot conclude that the Virginia pension offset provision is so patently arbitrary or irrational as to be constitutionally infirm. Rivera v. Becerra, supra, 714 F.2d at 895; McKay v. Horn, supra, 529 F.Supp. at 861-64. Cf. Ohio Bureau of Employment Services v. Hodory, supra, 431 U.S. at 492-93, 97 S.Ct. at 1910 (fiscal integrity of unemployment compensation fund is legitimate concern of state).
 
 B. Due Process
 
 62
 Watkins does not raise any claim of a denial of procedural due process, but rather contends that in light of the determination of Congress to require a less extensive pension offset than that established by the Virginia pension offset provision, the Virginia provision arbitrarily and unlawfully deprives unemployment compensation claimants receiving pensions of a protected property interest, viz., unemployment benefits, in violation of the Due Process Clause of the Fourteenth Amendment. This contention is meritless.
 
 
 63
 As this court has previously stated, "[t]he standard of review under substantive due process is that the statute must be upheld if there is any rational basis for the classification made therein." Leikind v. Schweiker, 671 F.2d 823, 825 (4th Cir.1982) (emphasis in the original). For the reasons noted in the previous subsection, we hold that the Virginia pension offset provision does not violate due process. McKay v. Horn, supra, 529 F.Supp. at 864.
 
 V. Conclusion
 
 64
 Because we hold that the Virginia pension offset provision, Va.Code Sec. 60.1-48.1, violates neither FUTA's pension offset provision, 26 U.S.C. Sec. 3304(a)(15), nor the Equal Protection or Due Process Clauses of the Fourteenth Amendment, we affirm the order of the district court granting summary judgment for the defendants.[7]
 
 
 65
 AFFIRMED.
 
 
 
 *
 Honorable John W. Peck, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 Va.Code Sec. 60.1-48.1 provides:
 Sec. 60.1-48.1. Reduction of benefit amount by amount of pension.--The weekly benefit amount payable to an individual for any week which begins after September 30, 1979 and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual, including payments received by such individual in accordance with Secs. 65.1-54 or 65.1-55 of the Code of Virginia, shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week.
 
 
 [2]
 26 U.S.C. Sec. 3304(a)(15) provides:
 (a) Requirements. The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission, which he finds provides that--
 * * *
 (15) the amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week except that--
 (A) the requirements of this paragraph shall apply to any pension, retirement or retired pay, annuity, or other similar periodic payment only if--
 (i) such pension, retirement or retired pay, annuity, or similar payment is under a plan maintained (or contributed to) by a base period employer or chargeable employer (as determined under applicable law), and
 (ii) in the case of such a payment not made under the Social Security Act or the Railroad Retirement Act of 1974 (or the corresponding provisions of prior law), services performed for such employer by the individual after the beginning of the base period (or remuneration for such services) affect eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity, or similar payment, and
 (B) the State law may provide for limitations on the amount of any such a reduction to take into account contributions made by the individual for the pension, retirement or retired pay, annuity, or other similar periodic payment....
 
 
 [3]
 42 U.S.C. Sec. 503(a)(1) provides:
 (a) The Board [Secretary of Labor] shall make no certification for payment to any State unless it finds that the law of such State, approved by the Board [Secretary of Labor] under the Federal Unemployment Tax Act, includes provision for--
 (1) Such methods of administration (including after January 1, 1940, methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Board [Secretary of Labor] shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Board [Secretary of Labor] to be reasonably calculated to insure full payment of unemployment compensation when due....
 Watkins alleged that the Virginia pension offset provision violated 42 U.S.C. Sec. 503(a)(1) because by failing to provide unemployment insurance compensation without offsets to claimants receiving pensions or other retirement payments, VEC failed to pay benefits "when due". Whether the Virginia pension offset provision violates the "when due" clause is wholly dependent upon whether it violates FUTA's pension offset provision, 26 U.S.C. Sec. 3304(a)(15).
 
 
 [4]
 For a description of the class certified, see 568 F.Supp. at 1226 n. 1
 
 
 [5]
 "Base period" is that period established by state law for use in determining whether an individual has such an attachment to the work force as to be eligible for unemployment insurance compensation
 "A 'base-period' employer is any employer who paid wages on which the [Unemployment Insurance] eligibility of the claimant and the amount and duration of unemployment benefits is based." House Report at 5.
 A "chargeable" employer is any employer whose unemployment insurance account is charged for unemployment insurance benefits received by a former employee.
 Ordinarily, a "chargeable" employer and a "base-period" employer will be identical, although circumstances may exist in which they will be different. House Report at 5.
 
 
 [6]
 UIPL No. 7-81 Change 1 (June 9, 1981), 47 Fed.Reg. 29,904, 29,908 (1982), modified UIPL No. 7-81 with respect to the authority of states to limit the pension offset requirement concerning employee contributions. The Court of Appeals for the District of Columbia in Cabais v. Egger, supra, held that Sec. 5 of UIPL No. 7-81 Change 1 was substantive in nature and subject to the procedures of the Administrative Procedure Act, 5 U.S.C. Sec. 553. The Secretary of Labor subsequently revoked UIPL No. 7-81 Change 1. UIPL No. 7-81 Change 2 (Mar. 11, 1983), 48 Fed.Reg. 37,740, 37,741 (1983)
 
 
 [7]
 As a result of our holding, we need not reach the question of what remedy would be proper if the Virginia pension offset provision had contravened either FUTA or the Equal Protection or Due Process Clauses of the Fourteenth Amendment