IN THE COURT OF APPEALS OF TENNESSEE

FILED

July 22, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| ALLAN COMBS, et al., | ) | C/A NO. 03A01-9701-CV-00022 |
| | ) | |
| Petitioners-Appellees, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| BILLY J. STOKES, Commissioner | ) | APPEAL AS OF RIGHT FROM THE |
| of the Tennessee Department of | ) | SULLIVAN COUNTY CHANCERY COURT |
| Employment Security, | ) | |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HOLSTON DEFENSE CORPORATION, | ) | |
| | ) | HONORABLE RICHARD E. LADD, |
| Respondent-Appellant. | ) | CHANCELLOR |

For Appellant

CHERIE S. ADAMS
Wilson, Worley & Gamble, P.C.
Kingsport, Tennessee

EVERETT H. MECHEM
Holston Defense Corporation
Kingsport, Tennessee

For Appellees Combs, et al.

D. BRUCE SHINE
DONALD F. MASON, JR.
Shine & Mason
Kingsport, Tennessee

For Appellee Stokes

JOHN KNOX WALKUP
Attorney General & Reporter

SANDRA E. KEITH
Office of the Attorney General
Nashville, Tennessee

O P I N I O N

REVERSED AND REMANDED                                    Susano, J.

This is an unemployment compensation case. Holston Defense Corporation (HDC) appeals the trial court's determination that 29 of its former employees ("the Petitioners") are entitled to receive full unemployment benefits with no offset for pension benefits. HDC raises one issue which presents the following question for our review:

> Does T.C.A. § 50-7-303(a)(8)(1) require the offset of Petitioners' pension funds against their unemployment compensation benefits, where petitioners elected to "roll over" their pension funds into individual retirement accounts?

Having determined that T.C.A. § 50-7-303(a)(8)(1) does require the offset of company-funded pension benefits against a claimant's unemployment compensation under such circumstances, we reverse.

I

The material facts are not in dispute. In 1993, HDC implemented a program to reduce its work force, in which it offered all of its employees the opportunity to voluntarily terminate their employment in exchange for various incentives. HDC announced that if fewer than the required number of employees opted for voluntary termination, some employees would be terminated involuntarily. Each of the Petitioners chose voluntary termination.

Upon termination of their employment, the Petitioners received incentive pay and other benefits, including a choice

2

between either a lifetime annuity payment or the distribution of their accrued pension funds, which had been furnished entirely by HDC. If they elected a present distribution of those funds, as opposed to an annuity, they had the further choice of a lump-sum payment that they could do with as they pleased, or a "roll over" of those funds into an individual retirement account (IRA). Each petitioner chose the latter option, primarily to avoid the tax consequences of the former.

The Petitioners subsequently applied to the Tennessee Department of Employment Security (the Agency) for unemployment compensation benefits. The Agency's subsequent award of benefits to the petitioners was upheld by its Appeals Tribunal. HDC then appealed the Appeals Tribunal's decision to the Agency's Board of Review, which held that, although the Petitioners were otherwise eligible for unemployment compensation benefits, T.C.A. § 50-7-303(a)(8)(1) required that those benefits be offset by the prorated weekly amounts of their employer-funded pensions. That decision, however, was reversed by the trial court, which held that the Petitioners were entitled to full unemployment compensation without any deductions.

II

The relevant Tennessee statute, T.C.A. § 50-7-303(a), provides, in pertinent part:

> DISQUALIFYING EVENTS. A claimant shall be disqualified for benefits:
>
> *       *       *

3

(8)(1) For any week with respect to which a claimant is receiving or is entitled to receive a pension... under a plan maintained or contributed to by a base period or chargeable employer as follows: The weekly benefit amount payable to such claimant for such week shall be reduced (but not below zero):

(A) By the entire pro-rated weekly amount of the pension if one hundred percent (100%) of the contributions to the plan were provided by a base period or chargeable employer; and

(B) By no part of the pension if any contributions to the plan were provided by such claimant.

       \*       \*       \*

(5) For purposes of this subdivision (a)(8), an individual shall be deemed entitled to receive a pension if a determination has been made by appropriate officials of such individual's vested right to a pension for any week in which such individual is entitled to receive benefits under this chapter;...

T.C.A. § 50-7-303(a).

In order for a state to receive federal certification and funding for its unemployment compensation program, it must first meet certain minimum standards set forth in the Federal Unemployment Tax Act (FUTA), 26 U.S.C.A. § 3301, *et seq.* *See* *Watkins v. Cantrell*, 736 F.2d 933, 937 (4th Cir. 1984); *Cabais v. Egger*, 690 F.2d 234, 235-36 (D.C. Cir. 1982). For example, the FUTA requires that any pension funds *received* by a claimant be offset against his or her unemployment compensation benefits. 26 U.S.C.A. § 3304(a)(15). Tennessee's corresponding offset provision, quoted above, is broader than that of the federal statute. *See* T.C.A. § 50-7-303(a). However, it has been widely held that the FUTA establishes only the *minimum* requirements for

4

the offset of pension benefits; for instance, the **Cabais** court
stated:

> Section 3304(a)(15)... reflects only the
> minimum conditions under which deduction must
> be required by State law for certification
> under FUTA. Although a State may broaden the
> scope of its deduction of pension payments
> beyond the conditions in which deduction is
> required under the Federal law, it may not
> adopt less stringent conditions which fall
> short of the Federal requirement.

**Cabais**, 690 F.2d at 242-43. *See also* **Watkins**, 736 F.2d at 939
(states can enact broader offset provisions than those mandated
by 26 U.S.C.A. § 3304(a)(15)); **Bleau v. Hackett**, 598 F.Supp. 727,
733 (U.S.D.C. R.I. 1984) ("... the Secretary of Labor has
consistently interpreted § 3304(a)(15) as setting only minimum
offset requirements.") We hold that T.C.A. § 50-7-303(a)(8)(1)
is not in conflict with the federal statute.

We are required to employ the same standard of review
used by the trial court when it examined the Board of Review's
decision. **Armstrong v. Neel**, 725 S.W.2d 953, 955 n.1 (Tenn.App.
1986). Under that standard, we may

> ...reverse, remand or modify the decision if
> the rights of the petitioner[s] have been
> prejudiced because the [trial court's]
> findings, inferences, conclusions or
> decisions are:
>
> (A) In violation of constitutional or
> statutory provisions;
>
> (B) In excess of the statutory authority of
> the agency;
>
> (C) Made upon unlawful procedure;

5

                    (D) Arbitrary or capricious or characterized
                    by abuse of discretion or clearly unwarranted
                    exercise of discretion; or

                    (E) Unsupported by evidence which is both
                    substantial and material in the light of the
                    entire record.


T.C.A. § 50-7-304(i)(2)(Supp. 1996).


                                    III


        HDC and the Agency argue that the language of T.C.A. §
50-7-303(a)(8)(1) clearly requires that the Petitioners'
unemployment compensation be reduced by the prorated amount of
their pension funds.  They contend that the Petitioners fell
within the statute's definition of entitlement to receive pension
funds, and that the legislature anticipated this type of delayed
receipt of pension benefits when it included the language
"receiving or... *entitled to receive*" in the statute.  T.C.A. §
50-7-303(a)(8)(1) (emphasis added).  HDC and the Agency point out
that the legislature provided no special exemption for any
particular disposition of pension funds made by a claimant
entitled to such funds.


        The Petititoners, on the other hand, argue that they
did not "receive" the pension benefits, but instead merely
transferred the funds while maintaining their "status quo".  They
point to language in the Agency's manual, which states that a
pension roll-over into an IRA is considered a "delay of pension,"
and that benefits may not be reduced where a claimant is merely
"eligible for" pension benefits (as opposed to "entitled to

                                    6

receive" them).  We find these contentions to be without merit.
In the first place, the Petitioners were entitled to their
pension benefits, when they elected to transfer them into IRAs.
Secondly, to the extent that the Agency manual contradicts the
clear language of the statute, it carries no authority, and the
statute must control.

The Petitioners also cite various documents issued by
the United States Department of Labor to support their position.
One such document, entitled "Unemployment Insurance Program
Letter No. 22-87," draws a distinction, as does the Agency
manual, between "eligibility for" and "entitlement to" pension
benefits.  As previously noted, we believe that the Petitioners
*were* entitled to their pension benefits; this distinction,
therefore, is of no consequence under these circumstances.  The
document also refers to situations in which pension benefits,
having been deemed "constructively" received, are offset against
unemployment benefits, but are never actually received.  This
language does not apply to the facts of our case.  The benefits
were, in fact, received when they were rolled over into IRAs.

The other Department of Labor documents cited by the
Petitioners include a letter to the Agency's Commissioner and a
subsequent Unemployment Insurance Program Letter, each of which
indicate that a state is not required to offset, against
unemployment compensation, pension funds that are "rolled over"
into an IRA.  These documents, however, beg the question, for as
noted earlier, the FUTA sets forth only *minimum* conditions under
which a state must require such deductions.  States are free to

7

require the offset of pension funds under much broader circumstances -- including where such funds are "rolled over" into an IRA -- than those mandated by the federal act. Therefore, our statute's mandatory deduction of pension payments from a claimant's unemployment benefits is not inconsistent with the federal law. Accordingly, we find the Petitioners' contentions to be without merit.

We are therefore left with a straightforward question of statutory interpretation. Where, as in this instance, the subject statute is unambiguous, "we need only enforce the statute as written." *In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn.App. 1995). The statute clearly states that a claimant's benefits shall be reduced for any week in which he or she is receiving or is entitled to receive a pension. T.C.A. § 50-7-303(a)(8)(1). The Petitioners fell squarely within this provision. They were "entitled to receive" their pension benefits when they made the decision to take a lump-sum distribution rather than an annuity. Furthermore, they, in effect, received those funds when they were rolled over into their own retirement accounts. The Petitioners cannot circumvent the statute by means of this voluntary choice; nor can they rely upon a statutory exception that does not exist. We therefore hold, under the standard of T.C.A. § 50-7-304(i)(2)(A), that the trial court's decision is contrary to the offset provisions contained in our statute. Under the facts before us, T.C.A. § 50-7-303(a)(8)(1) does require the offset of Petitioners' pension funds against their unemployment compensation.

The judgment of the trial court is reversed and the petitions dismissed at the petitioners' cost. Costs on appeal are assessed against the Petitioners. This case is remanded to the trial court for the collection of costs on the proceedings below, pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Houston M. Goddard, P.J.

_____
William H. Inman, Sr.J.

9