GLEASON, APPELLEE, *v.* OHIO BUREAU OF EMPLOYMENT SERVICES,
UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, APPELLANT.

[Cite as Gleason *v.* Bur. of Employment Services (1985),
17 Ohio St. 3d 107.]

(No. 84-524—Decided May 22, 1985.)

108

*Guy V. Bozza* and *Timothy G. Paluf,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Howard M. Sanders, Douglas J. Haynes* and *Dwight Tillery,* for appellant.

HOLMES, J. The sole issue presented is whether the application of R.C. 4141.312 and the restrictions within the Federal Act would reduce appellee's unemployment compensation by the amount of disability retirement benefits that he received. The record before us demonstrates that the benefits which appellee received from PERS consisted of sums he paid into the fund as part of the payroll deductions, and not those paid by his employer. The court of appeals held that the portion of the pension fund representing an employee's contribution cannot be offset against an award for unemployment compensation. However, for the reason set forth below, we must reverse the appellate court's ruling.

Before specifically addressing this issue, some background information is beneficial. Unemployment insurance in this country is the responsibility of both state and federal governments. Under the Federal Act, employers must pay federal unemployment taxes on wages while each state provides unemployment compensation to eligible claimants in accordance with state law. If the laws of each state comply with the minimum federal standards, employers receive a credit against their federal tax liability. The state also receives federal funding to cover the necessary costs of administering the state program if it complies with the Federal Act and the Social Security Act provision of Section 503(a), Title 42, U.S. Code.

The Department of Labor informs the various state agencies of the minimum federal standards by issuing Unemployment Insurance Program Letters (hereinafter "UIPL"). Then each year the Secretary of Labor evaluates the laws of all fifty states and certifies those that are in compliance with the federal standards. In ascertaining whether a state's unemployment compensation system is in compliance, the Secretary of

Labor principally relies on the positions that he has taken in the interpretive letters.

In 1976 certain members of Congress voiced concern over retirees who were collecting unemployment benefits and had no intention of returning to work.[1] In an effort to alleviate this problem, Section 3304(a)(15), Title 26, U.S. Code, was enacted. However, Congress soon recognized that this provision was ineffective in distinguishing those who were genuinely retired and had no intention of rejoining the work force, from those who, despite having been forced into retirement, needed to gain additional employment in order to meet their living expenses.

Thus, the Federal Act was amended by Section 414 of the Multiemployer Pension Plan Amendments Act of 1980. Section 3304(a)(15) currently provides:

"(a)  Requirements. — The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission, which he finds provides that—

"[* * *]

"(15)  the amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual *shall* be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week except that—

"(A)  the requirements of this paragraph *shall* apply to any pension, retirement or retired pay, annuity, or other similar periodic payment only if—

"(i)  such pension, retirement or retired pay, annuity, or similar payment is under a plan maintained (or contributed to) by a base period employer or chargeable employer (as determined under applicable law), and

"(ii) in the case of such a payment not made under the Social Security Act or the Railroad Retirement Act of 1974 (or the corresponding provisions of prior law), services performed for such employer by the individual after the beginning of the base period (or remuneration for such services) affect eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity, or similar payments, and

"(B) the State law may provide for limitations on the amount of any such a reduction to take into account contributions made by the individual for the pension, retirement or retired pay, annuity, or other similar periodic payment[.]" (Emphasis added.)

Subsections (A)(i) and (A)(ii) specify the conditions under which unemployment benefits are to be mandatorily reduced by either pension plans or social security and railroad retirement benefits. As to pensions,

---

[1] 122 Cong. Rec. 33279-80 (1976), remarks of Senators Long and Bartlett.

(A)(i) mandates offset of payments made pursuant to a plan which the base period employer maintained or contributed to; whereas, (A)(ii) imposes the additional requirement that the pension increased or the worker gained eligibility as a result of services performed during the base period.[2]

It is without question that appellee's PERS benefits are within the purview of clauses (i) and (ii) in subsection (A). Appellee's base period employer, the state of Ohio, contributed to his PERS pension fund, and the amount of his pension certainly increased as a result of his employment during the base period. The focal point of this appeal, however, surrounds subsection (B) and whether any amount of appellee's contribution to the PERS fund may be subtracted from that amount required to be set off against his unemployment compensation benefits.

Subsection (B) clearly provides authority to the Ohio General Assembly to eliminate or reduce the employee's contribution to the pension fund in determining the amount of pension to be deducted from any unemployment compensation. UIPL 7-81.[3] However, the General Assembly has not acted pursuant to such authority.

The relevant statute herein is R.C. 4141.312 which states in pertinent part:

"Notwithstanding sections 4141.31 and 4141.311 of the Revised Code, and to the extent that the following provisions are required as a condition for full tax credit against the tax imposed by the 'Federal Unemployment Tax Act of 1976,' 84 Stat. 713, 26 U.S.C. 3301, then the following conditions shall apply:

"(A) *The amount of benefits payable to a claimant* for any week with respect to which the claimant is receiving a governmental or other pension * * * *shall, to the extent required by such federal act, be reduced by an amount equal to the amount of the pension* * * * which is reasonably attributable to that week." (Emphasis added.)

The plain meaning of this provision requires a reduction in unemployment compensation to the extent mandated by the Federal Act. As stated above, the Federal Act clearly mandates the reduction in the absence of a state statute. Therefore, we have no alternative but to set off the entire

---

[2] The "base period" is that period of employment during which eligibility for unemployment compensation is accrued. See R.C. 4141.01(Q).

[3] UIPL 7-81 was amended by the Department of Labor in UIPL 7-81 Change I. Section 5 of the amendment provided detailed rules with mathematical formulae for determining the proportion of individual contribution to the entire pension plan. This section specifically limited state discretion and imposed an obligation on the state not found in the Federal Act. Due to its nature, the directive has been found to be substantive, not merely interpretative, and in violation of the notice and comment provision of the Administrative Procedure Act, Section 553, Title 5, U.S. Code. *Cabais* v. *Egger* (C.A. D.C. 1982), 690 F. 2d 234; cf. *Rivera* v. *Becerra* (C.A.9, 1983), 714 F. 2d 887. Accordingly, in UIPL 7-81 Change II, the department's position set forth in the original UIPL 7-81 was reinstated and Change I was thereby revoked.

amount of appellee's PERS benefits against his unemployment compensation.

Accordingly, we hold that in the absence of a state statute, when an individual's pension satisfies the requirements of Section 3304(a)(15)(A), Title 26, U.S. Code, the entire amount of the pension is set off against any unemployment compensation due the claimant.

The judgment of the court of appeals is reversed.

*Judgment reversed.*

SWEENEY, LOCHER, C. BROWN and WRIGHT, JJ., concur.

CELEBREZZE, C.J., dissents separately.

DOUGLAS, J., dissents.

CELEBREZZE, C.J., dissenting. Subsequent to Ohio's adoption of R.C. 4141.312, Congress amended Section 3304(a) in several respects. One pertinent change was the addition of Section 3304(a)(15)(B) which "* * * exempts states from this requirement to the extent that the state determines to take into account an unemployment insurance compensation claimant's contributions for the pension or retirement payment." *Watkins* v. *Cantrell* (C.A.4, 1984), 736 F. 2d 933, 939. Under the amended federal statute, state unemployment compensation programs are only required to offset that portion of unemployment benefits equivalent to retirement payments received by the claimant which is *not* attributable to "* * * contributions made by the individual for the pension * * *." Section 3304(a)(15)(B). While states are free to set broader offset provisions than the minimum requirements imposed by the Federal Act, there is no longer a federal mandate to offset the return of a claimant's own money from the retirement plan.

Ohio's disability retirement program consists of the employee's personal contribution and a pension portion broadly characterized as the payments to be received by a retirant in excess of the employee's contributions.[4] It is uncontroverted that the disability retirement payments made thus far to appellee by the Public Employees Retirement System comprise sums which he previously contributed to the plan. Likewise, it is uncontroverted that but for appellant's "offset" position, appellee is otherwise eligible for unemployment benefits.

Although states may impose offset provisions more stringent than

---

[4] Ohio's disability retirement program is defined in R.C. 145.36 as consisting of "[a]n annuity having a reserve equal to the amount of the retirant's accumulated contributions" (R.C. 145.36[A]), and a "pension" which in essence is the total projected benefits less the annuity (R.C. 145.36[B]).

those required under the Federal Act, in my opinion the Ohio General Assembly has chosen not to enact a statute which exceeds federal minimum standards. R.C. 4141.312 plainly states that the pension offset provisions enumerated therein apply only "* * * to the extent required by such federal act * * *."[5]

Payment of unemployment benefits to appellee, so long as he is receiving pension payments attributable to *his* contribution, does not put Ohio in conflict with federal law. The majority's denial of such benefits exceeds, rather than conforms to, federal requirements. Such a result was clearly not intended by the legislature when it enacted the pension offset provisions of Ohio's unemployment compensation laws. Accordingly, I encourage the members of Ohio's General Assembly to forthwith enact appropriate legislation to correct today's ill-conceived holding, as it is now in their hands to "* * * atone for the wrong this day done."[6]

---

[5] The Ohio General Assembly provided in R.C. 4141.01 that certain definitions are taken from corresponding federal Acts "as amended." This is similar to provisions in Ohio's income tax laws which refer to portions of the Internal Revenue Code "as now or hereafter amended" in order to avoid the necessity of reenactment of state laws each time Congress amends the federal Acts. R.C. 5747.01(H).

[6] *Plessy* v. *Ferguson* (1896), 163 U.S. 537, 562, Harlan, J. dissenting.