CITY OF INDEPENDENCE, Appellant,

v.

VENTURA et al., Appellees.

[Cite as *Independence v. Ventura* (1996), 113 Ohio App.3d 661.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69770.

Decided Aug. 26, 1996.

*Kelley, McCann & Livingstone, Stephen M. O'Bryan,* Law Director, and *Kurt D. Weaver,* Assistant Law Director, for appellant.

*Betty D. Montgomery,* Attorney General, and *Charlett Bundy,* Assistant Attorney General, for appellee Administrator, Ohio Bureau of Employment Services.

*Timothy N. Toma,* for appellee John A. Ventura.

JAMES M. PORTER, Judge.

Appellant city of Independence appeals from a judgment of the common pleas court affirming an award of unemployment compensation by the Ohio Bureau of Employment Services ("OBES") made in favor of the city's former employee, appellee John Ventura. The city contends that the OBES should have set off against the unemployment benefits permanent disability benefits awarded the employee by the Public Employment Retirement System ("PERS") and that the employee was not eligible for unemployment benefits because he quit his job and was not available for work. For the reasons hereinafter stated, we reverse and hold that the employee's PERS disability benefits must be set off against his unemployment benefits.

Ventura was hired by the city on May 1, 1977 as a Grade III maintenance person in the city's Sewer Department. On December 18, 1977, Ventura was promoted to a Grade II maintenance position. On December 5, 1982, he was promoted to a Grade I maintenance position, where he served for over nine years through August 1992.

In late 1991, Ventura developed an asthmatic condition later found by the Industrial Commission not to be work-related. On November 30, 1991, Ventura submitted to the City Service Director a medical note from Dr. Michael J. Papsidero, who recommended that Ventura not work "midnight shifts or irregular hours until further notice." The note did not indicate any reason for the restriction and Ventura never submitted any information concerning his medical

condition to support Dr. Papsidero's requested restriction. Nevertheless, the city honored Ventura's request. Ventura was not required to perform Grade I duties which would have required him to work during the restricted hours, although one of the functions of a Grade I employee was to be "on call" twenty-four hours a day.

On December 16, 1991, Ventura presented the city with another restriction from Dr. David M. Weiner, which stated that Ventura "had asthma which is exacerbated by diesel fumes" and that he should be "excused from driving trucks if he has problems."

After receiving the medical certificates from Drs. Papsidero and Weiner, the city adjusted Ventura's work schedule and duties to avoid working after midnight or working near diesel vehicles and operating the garbage truck, customarily part of a Grade I employee's duties. Ventura was assigned to operating the city's gasoline vehicles, working in the recycling program, and performing weeding, tilling and other general labor functions, more appropriately performed by Grade III maintenance personnel. Despite these lower scale duties, Ventura continued to be paid at the higher Grade I rate of pay.

On January 24, 1992, at the request of the city, Ventura was examined by Dr. Patrick Bray. In a March 13, 1992 letter to the Service Director, Dr. Bray explained that Ventura "has asthma, which is made worse by diesel fumes." He cautioned that Ventura needed to avoid diesel fume irritants, but noted that "[b]y definition, asthma is a reversible and temporary constriction of the airways."

On July 29, 1992, Dr. Bray reexamined Ventura. In a July 30, 1992 letter to the Service Director, Dr. Bray again noted that Ventura suffered from asthma. Dr. Bray stated in the letter that Ventura should continue to be restricted in his exposure to diesel fumes and, while he could work irregular hours, he should not work during the "six hours or so after midnight." Dr. Bray also noted that Ventura had increased his exercise, which has "specifically restored some sense of well-being and endurance."

Between June 8, 1992 through August 30, 1992, the city continued to accommodate Ventura by not assigning him to work after midnight or on diesel powered vehicles or driving the garbage truck. However, according to Ventura, he still worked in the vicinity of the garage, which exposed him to diesel fumes, and although he complained, no adjustment was made. He continued to receive the higher Grade I pay, even though he performed Grade III duties.

In early August, 1992, pursuant to a prior agreement with Ventura's union and the city's management rights under the AFSCME Labor Agreement, the Service Director reviewed the essential functions of the Grade I position and restrictions imposed by Ventura and/or his physicians on his job performance capabilities and

determined that he was unable to safely and substantially perform a majority of the essential functions of his job. Specifically, it was determined that Ventura could not, *inter alia*, "work on the garbage truck, cut grass using tractors, operate the chipper machine or other diesel equipment, wash trucks, work on asphalt crews, or plow snow at night, or do any emergency work after midnight."

On August 30, 1992, the Service Director reclassified Ventura from a Grade I to a Grade III employee and continued to assign him duties which were consistent with restrictions requested by Ventura and his physicians. Although several grievances were filed on behalf of Ventura under the collective bargaining agreement, these were voluntarily withdrawn by Ventura or AFSCME. Ventura was advised that if his condition improved and the restrictions were removed, he would be reclassified to a Grade I position.

On August 31, 1992, Ventura saw, for the first time, Dr. James B. Sauers, a pediatric and adult allergist. A skin test revealed that Ventura is allergic to certain grasses, dust, molds and animal hair, which produced the same symptoms as Ventura's asthma.

On the morning of June 21, 1993, while Ventura was cleaning a storm sewer catch basin, he claimed that he had a very difficult time due to the humidity. He took sick leave, saw Dr. Sauers that afternoon, and never returned to work at the Service Department.

The next day, June 22, 1993, Ventura presented the city with his application for a permanent disability retirement pension from the Ohio Public Employment Retirement System ("PERS") along with a note from Dr. Sauers, which stated that he had an asthmatic/respiratory condition precipitated and aggravated by his work environment "and that he should not return to work until further notice."

During the pendency of his PERS application, Ventura told PERS that he was unable to work in diesel fumes, asphalt vapors, humidity, cold air, dust, smoke, midnight shifts or irregular hours. At no time prior to June 21, 1993, however, did Ventura present any doctor's note or other medical documentation to the city claiming that he could not work in the dust, heat, extreme cold, or humidity. He did testify before the Unemployment Compensation Board of Review, however, that he made known to his employer many times the problems he had medically, only to be told that "if I can't do the job I was hired to do there's the door." Ventura also testified that he asked many times to be assigned to carpentry work or building maintenance in order to escape the weather conditions and fumes but that his employer refused to assign him to such duties.

On December 21, 1993, Ventura brought suit in federal district court alleging that the city and certain individuals had discriminated and retaliated against him in violation of the Americans with Disabilities Act, Section 12101 *et seq.*, Title 42,

U.S. Code. On April 18, 1995, the district court granted summary judgment for defendants and the case is on appeal to the United States Court of Appeals for the Sixth Circuit

On February 22, 1994, PERS granted Ventura a full disability retirement pension retroactive to August 1, 1993. Ventura received a PERS lump sum payment of approximately $16,000 covering the period July 31, 1993 through February 22, 1994. Ventura has collected monthly PERS disability retirement pension checks of approximately $1,900 per month ever since, and will continue to receive these benefits for the next twenty-seven years. He likewise collected unemployment compensation for twenty-six weeks ($291 per week) from August 22, 1993 to February 12, 1994, totalling $7,566.

Ventura never returned to work at the Service Department, nor was he formally terminated by the city.

Ventura filed an application with OBES for unemployment benefits on August 27, 1993, for a benefit year beginning August 22, 1993. The city opposed the application, advising OBES that Ventura had walked off of his job on June 21, 1993 and, thereafter, voluntarily filed with PERS for disability retirement, claiming that he was permanently disabled to perform his job.

On October 15, 1993, the administrator issued an initial determination that Ventura had quit his employment with the city with just cause, imposed no disqualification for benefits, and allowed the first claim for the week ending August 28, 1993.

The city timely filed a request for reconsideration of the administrator's initial determination on October 26, 1993. By decision dated February 17, 1994, the administrator affirmed the initial decision. On March 3, 1994, the city appealed the administrator's decision to the Unemployment Compensation Board of Review.

On July 18, 1994, an evidentiary hearing was held before a referee of the board of review. The referee affirmed the decision of the administrator. The referee held that the OBES was not required to offset any OBES benefits for the benefit year August 22, 1993, by the amount of Ventura's PERS disability benefit which he received effective August 1, 1993.

The city filed an application to institute further appeal to the board of review. The application was disallowed without opinion. On October 4, 1994, the city filed a notice of appeal pursuant to R.C. 4141.28(O)(1) with the Court of Common Pleas for Cuyahoga County. On October 6, 1995, the lower court, without opinion,

denied the city's appeal and affirmed the decision of OBES. A timely appeal to this court by the city ensued.

We will address the city's assignments of error in the order asserted.

"I. The trial court erred in affirming the Board of Review's order when it did not offset Ventura's unemployment benefits with the PERS disability retirement pension payments he also received."

■ The city contends that the board of review and the lower court committed reversible error when they concluded that Ventura's PERS disability retirement payments should not be set off against his unemployment benefits. We agree with the city's contentions.

R.C. 4141.312 states:

"Notwithstanding sections 4141.31 and 4141.311 of the Revised Code, and to the extent that the following provisions are required as a condition for full tax credit against the tax imposed by the 'Federal Unemployment Tax Act of 1976,' 84 Stat. 713, 26 U.S.C. 3301, then the following conditions shall apply:

"(A) The amount of benefits payable to a claimant for any week with respect to which the claimant is receiving a governmental or other pension, retirement or retired pay, annuity or any other similar periodic payment which is based on the previous work of the individual, shall, to the extent required by such federal act, be reduced by an amount equal to the amount of the pension, retirement or retired pay, annuity or other payment which is reasonably attributable to that week."

This mandatory setoff regarding PERS disability benefits has been previously addressed by the Ohio Supreme Court.

In *Gleason v. Ohio Bur. of Emp. Serv.* (1985), 17 Ohio St.3d 107, 17 OBR 256, 478 N.E.2d 225, syllabus, it was held:

"In the absence of a state statute, when an individual's pension satisfies the requirements of Section 3304(a)(15)(A), Title 26, U.S.Code, the entire amount of the pension is set off against any unemployment compensation due the claimant."

Also, in *Cicchella v. Ohio Bur. of Emp. Serv.* (1985), 19 Ohio St.3d 152, 19 OBR 374, 483 N.E.2d 851, the court applied the *Gleason* holding to a situation in which OBES, itself, sought to set off a claimant's unemployment benefits by the amount of Social Security benefits she received. See, also, *Carcione v. Ohio Bur. of Emp. Serv.* (Oct. 30, 1986), Cuyahoga App. No. 51083, unreported, 1986 WL 12383 (based on *Gleason* and *Cicchella,* this court held Social Security benefits should be set off against unemployment benefits). R.C. 4141.312, therefore, requires unemployment compensation benefits to be offset by other governmental benefits received for the same period of time. It appears that the board failed to consider

this section of the Revised Code, as it merely stated that "payments from a disability retirement are not deductible from unemployment benefits under Section 4141.31, Revised Code." However, R.C. 4141.31(A)(3) clearly states "except as provided in section 4141.312 of the Revised Code."

Here, Ventura applied for PERS disability benefits on June 22, 1993. These were not allowed until February 22, 1994, but were retroactive to August 1, 1993. He received a lump sum pension payment of approximately $16,000 from PERS covering the same period for which he received unemployment benefits. Under R.C. 4141.312, Ventura's unemployment benefits must be reduced by the additional benefits he received from PERS to avoid "double dipping," a practice which the General Assembly plainly sought to prohibit by enacting R.C. 4141.312.

The OBES administrator "does not dispute the fact" that an overpayment was created by Ventura's receipt of PERS benefits or that "such fact is part of the record." Further, the administrator contends that OBES is not at fault for Ventura's receipt of dual benefits from both OBES and PERS because of the timing between the rulings from OBES and PERS.

In any event, the administrator argues that the proper procedure to rectify the overlapping payments and to effect the setoff required by law is for the OBES to determine there was an overpayment and recover the overpayment from the benefited employee under R.C. 4141.35(B)(1). The city is not content with such a *post hoc* remedy, because, it argues, both the facts and the law required the OBES and the lower court to set off Ventura's dual benefits at the time the issue was first raised, not await some later administrative remedy. We agree with the city's argument.

R.C. 4141.28(C) provides that, once an application for unemployment compensation benefits is filed, the administrator shall "promptly examine any application for determination of benefit rights filed, and on the basis of any facts found by him shall determine * * * the weekly benefit amount." Therefore, the administrator was required by Ohio law at the time Ventura's application was filed to determine the benefit amount, including whether any setoff should be made. The PERS issue was brought up at the administrative level as evidenced by the documents submitted to the administrator. However, at the time the administrator determined whether and how much Ventura should be paid, Ventura's right to PERS disability benefits had not yet been decided by PERS. PERS did not grant Ventura's request for disability until February 22, 1994, five days after the administrator affirmed its initial decision. However, the city also specifically raised the issue of Ventura's PERS disability pension (after it had been allowed) at the board of review's evidentiary hearing on July 18, 1994.

■ The issue of Ventura's PERS disability pension, once allowed, was required to be addressed by the board of review under Ohio Adm. Code 4146–5–03, which states:

"Any issue within the jurisdiction of the Administrator concerning a decision on reconsideration from which appeal is taken * * * shall be heard, considered and decided by the Board [of Review] * * * though not specifically (a) considered or referred to by the Administrator in his decision, (b) indicated in the appeal, or (c) raised by an interested party. Failure to include notice of an issue in the 'notice of hearing,' as provided in 4146–5–04(A), shall not preclude consideration of the issue on appeal, but if any interested party is surprised by a new issue, and unprepared to proceed, a continuance shall be granted."

At no time during the July 18, 1994 hearing did Ventura, or his attorney, object to the city's argument that Ventura's OBES benefits should be set off by his PERS pension. Further, neither Ventura nor his attorney expressed "surprise" or requested a continuance as the PERS issue was brought up at all the administrative levels. Therefore, Ventura's PERS pension was properly before the board of review and the trial court.

Since the issue was properly raised before the board of review and the lower court, on appeal, those entities should have acted to set off Ventura's unemployment benefits by his PERS disability payments.

Assignment of Error I is sustained.

"II. The trial court erred in finding that Ventura was entitled to receive unemployment benefits."

Given our disposition of Assignment of Error I, this assignment of error is moot and need not be addressed. App.R. 12(A)(1)(c).

For the reasons hereinabove stated, we reverse the trial court, enter judgment for the city and remand the cause for further proceedings consistent with this opinion.

*Judgment accordingly.*

JAMES D. SWEENEY, P.J., and MATIA, J., concur.